OPINION
{¶ 1} Defendant-appellant Frank E. Scurlock, Jr. appeals his conviction in the Licking County Municipal Court on one count of operating a vehicle impaired, in violation of R.C.4511.19(A)(1)(a). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 2, 2005, Ohio State Highway Patrol Trooper Maines observed appellant's vehicle cross the white fog line and to be being operated without a functional license plate light. Trooper Maines activated his camera, again observing the vehicle cross the fog line on more than one occasion. Trooper Maines initiated a traffic stop, and cited appellant for operating a vehicle impaired, in violation of R.C. 4511.19(A)(1)(a). Trooper Maines observed appellant and noticed a strong odor of alcohol, bloodshot, glassy eyes and slurred speech. Maines performed standardized field sobriety testing, which indicated appellant was under the influence. Appellant refused to submit to a breath test.
 {¶ 3} Appellant entered a plea of not guilty. On September 12, 2005, the trial court set the matter for a bench trial on September 27, 2005. On September 27, 2005, appellant requested a continuance of the trial date in order to retain counsel. The trial court granted a continuance, rescheduling the bench trial for November 1, 2005. Appellant alleges he received notice of the new date, via Judgment Entry filed on October 12, 2005.
 {¶ 4} Appellant retained counsel on October 21, 2005. Counsel then moved the trial court for discovery, records request and a jury demand. On October 25, 2005, the trial court denied the jury demand. On October 27, 2005, appellant filed a motion for a bill of particulars and a motion to continue the trial date, seeking an opportunity to review discovery recently received. On November 1, 2005, the trial court denied the motion to continue, and proceeded to bench trial.
 {¶ 5} Appellant filed a motion in limine to preclude the introduction of any field sobriety test clues, results and/or percentages. The trial court denied the motion. Following the bench trial, the trial court found appellant guilty of operating a vehicle impaired, and sentenced appellant to 30 days incarceration, suspending 27 days; one year probation; one year drivers license suspension; and ordered appellant to complete 72 hours of a driver intervention program, with appellant responsible for a $300 fine and court costs.
 {¶ 6} Appellant now appeals, assigning as error:
 {¶ 7} "I. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT-DEFENDANT'S MOTION TO CONTINUE THE CASE TO GIVE COUNSEL TIME TO INVESTIGATE THE CASE, REVIEW DISCOVERY, THE BILL OF PARTICULARS, TO BRIEF THE MOTION TO DISMISS AND TO REVIEW THE CASE FOR CONSTITUTIONAL VIOLATIONS.
 {¶ 8} "II. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT-DEFENDANT'S MOTION TO DISMISS AND/OR IN LIMINE DUE TO THE DESTRUCTION OF VIDEO TAPE EVIDENCE."
 I {¶ 9} In his first assignment of error, appellant asserts the trial court erred in denying his motion to continue the November 1, 2005 trial date, via Judgment Entry of November 1, 2005. Specifically, appellant argues the trial court should have afforded his newly retained counsel time to investigate the case, review discovery, the bill of particulars and review the case.
 {¶ 10} The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial court.State v. Unger (1981) 67 Ohio St.2d 65, syllabus. Upon review of the record, the trial court granted appellant's first request for a continuance, affording him the opportunity to obtain counsel and prepare his defense. We cannot conclude the trial court's denial of appellant's second requested continuance was an abuse of discretion. "[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * *"State v. Jenkins (1984), 15 Ohio St.3d 164, 222.
 {¶ 11} We do not find such an abuse of discretion under the circumstances presented. Appellant's first assignment of error is overruled.
 II {¶ 12} In the second assignment of error, appellant asserts the trial court erred in denying his motion to dismiss and/or in limine due to the destruction of video tape evidence.
 {¶ 13} The day before trial, appellant discovered the destruction of the State's video tape of his traffic stop. Appellant maintains, due to the trial court's denial of his motion for continuance, counsel was not able to brief the issue or to submit a written motion to dismiss and/or in limine. Counsel raised the issue prior to the start of the bench trial. Rather, than granting the motion, the trial court afforded counsel an opportunity to proffer evidence on the issue. The record evidences the following exchange:
 {¶ 14} "Mr. Calesaric: Your Honor I have a motion to dismiss the case or at minimum to preclude the officer testifying about anything as it relates to his observations, field sobriety tests, any opinions related to what should be on video tape on his traffic stop. Proper discovery in this case and I went and looked at the video tape the other day and it only has the first few minutes of the traffic stop on it and after that it looks like it's been taped over. I would move to dismiss I believe the material that is (Inaudible) burden that we have to carry is somewhat heavy but I do believe there was some bad faith in this case according to the case law underneath Combs andDiernwald. OSP has a policy to preserve these videotapes they didn't take precautions in this case. They know the purpose of these video tapes is to utilize in Court as evidence in this case even the officer's report reflects the fact that the field sobriety test, he didn't talk much about the field sobriety test in his report because he says to see the impaired driver report and see in car video. Well there is none of that in this case, as the Court is well aware of the Combs decision, I assume the Court is aware of the Harrison decision, I think the Harrison
even came out of this Court or the other one but out of Licking County. In Combs they didn't take steps to protect the video evidence as their policy requires. Diernwald is another case on point, same thing they reflect upon OSP's policy to preserve the videotapes. In Diernwald that tape was recorded over and the Court goes through an interesting analysis of that, basically some of the things they point out in Diernwald is this is not a case like Harrison where it's due to the videotape not being available because the videotape, they didn't have a tape in the videotape or they were out of tape. In the is [sic] case it looks like it's actually been taped over as exactly on point as inDiernwald. This is not due to a normal malfunction but it appears to be due to some manual act, and as a result of that we request that that evidence be suppressed and or the case be dismissed. That is my first issue Your Honor.
 {¶ 15} "* * *
 {¶ 16} "Ms. Tuhy: It is my understating from talking with Trooper Maines that it wasn't a bad faith situation he didn't know that there was apparently a problem with the videotape he didn't know until I let him know today that he did not have all of that stop on the videotape until today so I don't believe that any bad faith was shown there. The walk and turn reveals indicators of the very relevant to the A1A test and the HGN even is relevant to show that alcohol was indeed consumed.
 {¶ 17} "Mr. Calesaric: Well if that clarifies an issue we'll stick with the issue that some alcohol was consumed if that's what it's being used for. And I would have briefed this Your Honor, I started to I just didn't have time whenever these time constraints (Inaudible) videotape situation, condition the condition of the videotape when I found out the condition of the videotape.
 {¶ 18} "The Court: Well Mr. Calesaric what evidence do you have the proper [sic] to prove bad faith here?
 {¶ 19} "Mr. Calesaric: Bad faith?
 {¶ 20} "The Court: Yes.
 {¶ 21} "Mr. Calesaric: My evidence in this case would be at minimum would be the fact that OSP has a policy that they are supposed to preserve the videotapes. I would also be using the videotape itself that the State has in it's possession to show that it's in the middle of my client's traffic stop and obviously it's also during the traffic stop that obviously it's taped over there is no, it looks like the tape had to have been rewound to even get to that point of the tape. That is directly along the lines of Combs and Diernwald and Diernwald actually citesCombs even though it's out of a different district it just deals with similar issues.
 {¶ 22} "The Court: Alright that is your proper [sic] on bad faith?
 {¶ 23} "Mr. Calesaric: Correct Your Honor.
 {¶ 24} "The Court: Alright that will be overruled then. O.K. let's proceed call your first witness Ms. Tuhy."
 {¶ 25} Transcript at 3-6.
 {¶ 26} Appellant argues that the videotape in the instant case was destroyed and the destruction of evidence required the dismissal of the charges against him due to the denial of his due-process rights.
 {¶ 27} In Arizona v. Youngblood (1988), 488 U.S. 51,109 S.Ct. 333, 102 L.Ed.2d 281, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by a state's failure to preserve evidence. The court stated the following:
 {¶ 28} "The Due Process Clause of the Fourteenth Amendment, as interpreted in [Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57-58,109 S.Ct. 333, 102 L.Ed.2d 281.
 {¶ 29} Thus, the Youngblood court established two tests: one that applies when the evidence is "materially exculpatory" and one that applies when the evidence is "potentially useful." If the state fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. However, evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. State v. Johnston (1988),39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. Stated in other words, "To be materially exculpatory, `evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" State v. Colby, Portage App. No. 2002-P-0061, 2004-Ohio-343, quoting California v. Trombetta
(1984), 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413. This court has consistently held that the burden of proof is on the defendant to show the exculpatory nature of the destroyed evidence. See State v. Birkhold (Apr. 22, 2002), Licking App. No. 01CA104, State v. Hill (Mar. 8, 1999), Stark App. No. 1998CA0083, State v. Blackshear (June 19, 1989), Stark App. No. CA-7638.
 {¶ 30} If, on the other hand, the state fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith. The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."State v. Franklin, Montgomery App. No. 19041, 2002-Ohio-2370.
 {¶ 31} We find the evidence on the videotape is potentially useful, rather than, materially exculpatory.
 {¶ 32} Upon full review of the record, we are unpersuaded the trial court erred in failing to find bad-faith destruction of evidence by the State. Appellant has not demonstrated the State had any motive to "destroy" the tape. We, therefore, hold the trial court did not err in denying appellant's motion to dismiss and/or in limine.
 {¶ 33} Appellant's second assignment of error is overruled, and appellant's November 1, 2005 conviction on one count of operating a motor vehicle impaired, in violation of R.C.4511.19(A)(1)(a), in the Licking County Municipal Court is hereby affirmed.
Hoffman, P.J. Farmer, J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, appellant's November 1, 2005 conviction in the Licking County Municipal Court on one count of operating a motor vehicle impaired, in violation of R.C. 4511.19(A)(1)(a), is affirmed. Costs assessed to appellant.