The STATE of Ohio, Appellee,

v.

RIVAS, Appellant.

[Cite as *State v. Rivas,* 172 Ohio App.3d 473, 2007-Ohio-3593.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 05–CA–147.

Decided July 13, 2007.

Stephen K. Haller, Greene County Prosecuting Attorney, and Elizabeth A. Ellis, Assistant Prosecuting Attorney, for appellee.

Marc D. Mezibov and Stacy A. Hinners, for appellant.

---

FAIN, Judge.

{¶ 1} Defendant-appellant, Jose Rivas, appeals from his convictions for importuning and attempted unlawful sexual conduct with a minor. The charges arose from Rivas's on-line chats with a Xenia police officer posing as a 14–year–old girl whom Rivas arranged to meet at a hotel for sex. Rivas filed a series of pretrial motions regarding discovery issues, after which the case proceeded to a jury trial. The jury found Rivas guilty as charged, and the trial court sentenced him to six months in prison.

{¶ 2} Rivas challenges the trial court's ruling that he not be allowed to make an electronic copy of the police department's computer hard drive on which the original records of the on-line chats were stored. Rivas also maintains that the transcripts of those chats should not have been admitted into evidence, because they were not properly authenticated. Although allowing Rivas to copy the entire hard drive may have compromised other investigations, as well as the privacy of those involved, we conclude that the trial court did have an obligation to conduct an in camera review to verify the accuracy of the copied records that Rivas received. In our view, forcing a litigant to rely upon an adverse party's representation that a transcript from a hard drive accurately reflects the information stored on the hard drive, when that accuracy could be directly verified, is inconsistent with due process. The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

## I

{¶ 3} In early January 2005, Xenia Police Detective Alonzo Wilson, who works in the Internet Child Protection Unit, entered an America On Line ("AOL") chat room. Within minutes of Alonzo entering the general chat room, and before he had even made any contributions, 36–year–old Rivas contacted Wilson via instant messaging and identified himself as a 19–year–old man. Wilson identified himself as a 14–year–old girl named Molly.

{¶ 4} The conversation quickly became sexual in nature, and Rivas sent a photograph of a young man lying naked on a bed. Much of the chat consisted of Rivas asking Molly about her sexual experience and describing in great detail what sexual acts he wanted to perform on Molly and have performed by Molly on him. Rivas offered Molly $200 and encouraged her to buy a $20 web camera so

that she could send him nude photos of herself. Molly did send one photo purporting to be of herself that was actually a photo of another, female detective taken when she was about 14 years old. While the two were making plans to meet for sex, Wilson's computer shut down. By the time he returned to the chat room, Rivas was gone.

{¶ 5} The following day Wilson contacted Rivas through the same chat room. Rivas again offered Wilson $200, and the two arranged to meet for sex at an area hotel later that afternoon. During the course of both conversations, Wilson made several references to being only 14 and not wanting to get pregnant. He also talked of school, homework, and cheerleading, and he told Rivas that he lived with his grandmother.

{¶ 6} Wilson, three other detectives, and a patrol officer set up a surveillance of the hotel. Rivas stopped at a gas station across the street and withdrew $300 from the ATM before checking into the hotel. Rivas paged Wilson with the room number. As the detectives approached the room, Rivas exited. The detectives arrested Rivas, who was carrying $200 in cash, three condoms, and a cell phone.

{¶ 7} Rivas testified in his own defense along with several character witnesses. Rivas disputed the accuracy of more than half of the content of the conversation with Wilson. He denied sending or receiving photos, and he denied claiming to be 19. Moreover, Rivas maintained that there was nothing said that could have led him to believe that he was communicating with a minor. Rivas insisted that he thought he was arranging to meet a 41–year–old woman.

## II

{¶ 8} Rivas's First Assignment of Error is as follows:

{¶ 9} "The trial court erred in denying appellant's motion to compel inspection and copying of the computer hard drive."

{¶ 10} In his First Assignment of Error, Rivas argues that the trial court erred in refusing to order the state to allow his expert to make an electronic copy of the police department's computer hard drive. The granting or denial of a motion to compel discovery is reviewed under an abuse-of-discretion standard. The inquiry is whether the trial court's decision is unreasonable, arbitrary, or unconscionable. *State ex rel. V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198. While we do not hold that the trial court was required to allow the making of the electronic copy of the hard drive, we do conclude that the trial court abused its discretion by refusing to allow any means for Rivas to be assured that the transcripts provided to him by the police, purporting to represent the information stored on the hard drive concerning his conversation with "Molly," were both complete and accurate.

{¶ 11} In preparation for trial, Rivas filed a motion to preserve all electronic evidence in the possession of the Xenia Police Department regarding the charges against him, and he filed a Crim.R. 16 demand for discovery. The trial court granted both motions, stating that Rivas could inspect the evidence in the presence and under the control of the Xenia Police Department. Citing security concerns, the state refused Rivas's expert access to the police department's hard drive and refused to allow Rivas's expert to make a "mirror image" or "electronic snapshot" of the information stored on the hard drive. The state did provide Rivas with a transcript of the chats both on paper and on disk.

{¶ 12} Claiming that the transcripts were incomplete, Rivas filed a motion to compel discovery. The trial court held that absent any allegations or evidence that the transcripts were inaccurate, Crim.R. 16 did not require that the state provide Rivas with a mirror image of the police department's hard drive. Insisting that the transcripts did not contain the complete record of the internet exchanges between himself and "Molly," Rivas moved for reconsideration, which the trial court overruled.

{¶ 13} Rivas's defense centers on his claim that he believed that he was communicating with a 41–year–old woman rather than a 14–year–old girl. He denies receiving the photo of Molly. Additionally, he disputes more than half of the conversation, denying all references to Molly going to school, doing home-work, cheerleading, living with her grandmother, or in any other way revealing that she was a minor. In order to support his claims, Rivas maintains that he needed access to the police department's hard drive because the only way that he could determine that the copies provided by the police were complete and accurate was to compare them to the information stored on the hard drive.

{¶ 14} The state contends that its interest in safeguarding the details of other investigations justified not allowing Rivas to have access to the hard drive. It is undisputed that the hard drive in question contained information regarding three years of investigation of child-exploitation cases, including many ongoing cases.

{¶ 15} Without adequate discovery, a defendant's ability to prepare a defense is compromised. While the state insists that their witnesses verified the accuracy of the copies, a defendant should not be required to take the word of the adverse party—the police in this case—that a transcript of information stored on a hard drive is accurate, especially where that information constitutes the very crime that the defendant is alleged to have committed.

{¶ 16} While we are sympathetic to the state's concerns, and we agree that there is a sufficient justification to disallow Rivas access to all of the information stored on the hard drive, which includes other investigations having nothing to do with his case, we conclude that the trial court overlooked a means of protecting

that interest while also protecting Rivas's right to a determination of the accuracy of the transcript provided by the state.

{¶ 17} In camera reviews are used by trial courts in many instances. Here, perhaps with the assistance of an expert of its own choosing, the trial court could have compared the information on the hard drive with the transcripts provided to Rivas by the state. The trial court would then be in a position to determine whether the copies were complete and accurate.

{¶ 18} One important aspect of the right to a fair trial is the right of the accused to confront the evidence against him. This is normally thought of as the right to confront witnesses, enshrined in the Sixth Amendment to the Constitution of the United States and Section 10, Article I of the Ohio Constitution. Increasingly, the testimony of witnesses may actually be less important to the outcome of a criminal trial than demonstrative evidence. Examples of this trend include DNA evidence in a criminal case and blood-alcohol tests in prosecutions for driving with a prohibited concentration of alcohol in the blood. Preventing an accused from having a reasonable means of verifying that a transcript, prepared by his adversary, the state, accurately and completely reflects direct evidence, in the state's possession, of the very conversation allegedly constituting the crime with which the accused is charged is, in our view, inconsistent with the accused's fair-trial right to confront the evidence against him.

{¶ 19} Where there is direct evidence of a conversation allegedly constituting the crime with which a defendant is charged, we hold that the right to a fair trial, embodied in the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and in Section 10, Article I of the Ohio Constitution, includes the right of the defendant to some reasonable means of verifying that a purported transcript of the conversation, prepared from the direct evidence by the adverse party, is accurate and complete.

{¶ 20} Rivas's First Assignment of Error is sustained.

## III

{¶ 21} Rivas's Second Assignment of Error is as follows:

{¶ 22} "The trial court erred in admitting into evidence at trial the state's unauthenticated paper printouts of electronic data."

{¶ 23} Because we have sustained Rivas's First Assignment of Error, his Second Assignment of Error is rendered moot, and we need not address the merits of this claim.

## IV

{¶ 24} Rivas's First Assignment of Error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment accordingly.

BROGAN and VALEN, JJ., concur.

ANTHONY VALEN, J., retired, of the Twelfth Appellate District, sitting by assignment.