THE STATE OF OHIO, APPELLANT, *v.* RIVAS, APPELLEE.

[Cite as *State v. Rivas*, 121 Ohio St.3d 469, 2009-Ohio-1354.]

*Criminal law — Discovery — Crim.R. 16(B)(1)(c) — Evidence on police computers — When a prosecutor has provided a written transcript that purports to accurately reflect data stored on a computer hard drive, a court may not order an examination of the computer hard drive unless the defense makes a prima facie showing that the state has provided false, incomplete, adulterated, or spoliated evidence — Judgment reversed.*

(No. 2007-1611 — Submitted September 16, 2008 — Decided March 31, 2009.)

APPEAL from the Court of Appeals for Greene County,

No. 05-CA-147, 172 Ohio App.3d 473, 2007-Ohio-3593.

_____

SYLLABUS OF THE COURT

Pursuant to a Crim.R. 16(B)(1)(c) discovery request, when a prosecutor has provided a written transcript that purports to accurately reflect data stored on a computer hard drive, a court may not order an examination of the computer hard drive unless the defense makes a prima facie showing that the state has provided false, incomplete, adulterated, or spoliated evidence.

_____

**O'DONNELL, J.**

{¶ 1} The Second District Court of Appeals reversed the judgment convicting Jose Rivas of importuning and attempted unlawful sexual conduct with a minor based on a trial court ruling denying him the opportunity to verify the accuracy of discovery provided by the state by allowing his expert to examine the state's computer hard drive. The state of Ohio has appealed that judgment to this court, and we agreed to address its proposition of law concerning the propriety of

a trial court denying a motion to compel discovery of a confidential law enforcement investigatory record absent a showing of particularized need. We conclude that when, pursuant to a Crim.R. 16(B)(1)(c) discovery request, a prosecutor has provided a written transcript that purports to accurately reflect data stored on a computer hard drive, a court may not order an examination of the computer hard drive unless the defense makes a prima facie showing that the state has provided false, incomplete, adulterated, or spoliated evidence. Because Rivas failed to meet that burden, the judgment of the court of appeals is reversed.

**Facts and Procedural History**

{¶ 2} On January 3, 2005, Detective Alonzo Wilson, a member of the Xenia Police Division's Internet Child-Protection Unit, logged onto an Internet chat service posing as a 14-year-old female named Molly. Jose Rivas, using the screen name JRivas123, contacted Molly, asking for her age, gender, and photograph. The two carried on an online conversation, and eventually Wilson e-mailed Rivas a teenage photo of a Xenia police detective. Rivas e-mailed Molly a picture of a male with an exposed, erect penis protruding through underwear and led her to believe it depicted him. He then propositioned her and offered her $200 to engage in sexual activity with him. Wilson contacted Rivas the next day, and Rivas again offered her $200 and arranged to meet her at the Holiday Inn in Xenia. Molly advised that she had a pager, and Rivas agreed to send her a page with his Holiday Inn room number.

{¶ 3} After printing a transcript of the online conversations, Wilson arranged to have a surveillance team watch the hotel. He waited in an office behind the front desk at the Holiday Inn as Rivas checked into a room, and he observed that the name Jose Rivas matched the suspect's screen name, JRivas123, in the online communications. The hotel assigned room 302 to Rivas, and soon thereafter, Wilson received an electronic page that contained the number 302.

Wilson arrested Rivas at the Holiday Inn, and subsequently, a grand jury indicted him for importuning and attempted unlawful sexual conduct with a minor.

{¶ 4} Prior to trial, Rivas moved to preserve the state's electronic evidence and sought a mirror image of the hard drive of the state's computer used by Wilson to communicate with him. The trial court ordered the state to allow Rivas to inspect the computer, but the prosecution refused to allow the defense to retrieve a mirror image of the hard drive, citing "security reasons." The prosecution provided a transcript of the conversations and a compact disc containing an electronic copy of the online communications.

{¶ 5} Rivas moved to suppress the computer-generated evidence and to compel the state to provide a mirror image of the computer hard drive. The trial court denied the motion to suppress and the motion to compel, concluding that Crim.R. 16(B)(1)(c) did not require the state to produce an exact copy of its computer hard drive "in the absence of allegations and some evidence that what has been provided is not accurate." In particular, the trial court found no evidence that the transcript of the Internet communications between Rivas and Wilson had been "altered or compromised in any way." It explained that any concerns identified by Rivas relating to altered or deleted data on the hard drive were relieved by the fact that rebooting and using the same computer for different cases would not have affected the accuracy or integrity of the transcript because Detective Wilson had printed the hard copy of the chats immediately following those sessions. The trial court further noted that Rivas had destroyed his own hard drive, which would have allowed him to verify the accuracy of the discovery provided by the state.

{¶ 6} At trial, Rivas alleged that the transcript did not accurately reflect his Internet communications with Wilson. He asserted that he had communicated with a 41-year-old woman, not a 14-year-old girl, and denied receiving a photograph of a 14-year-old girl during the online exchanges. His contention is

belied by the fact that there were several references in the transcript to doing homework, her supervision by her grandmother, the fact that she had to be home by a certain hour, and his assent that she would be able to comply with that time deadline. Rivas challenged the accuracy of some of the statements appearing in the transcript. The jury found Rivas guilty of importuning and attempted unlawful sexual conduct with a minor.

{¶ 7} The court of appeals reversed both convictions, holding that the trial court had violated Rivas's right to a fair trial when it refused Rivas the opportunity to verify the accuracy and completeness of the computer transcripts prepared by the state, stating that "a defendant should not be required to take the word of the adverse party * * * that a transcript of information stored on a hard drive is accurate * * *." *State v. Rivas*, 172 Ohio App.3d 473, 2007-Ohio-3593, 875 N.E.2d 655, at ¶ 15. The appellate court concluded that the trial court could have upheld the state's need to safeguard the confidentiality of information stored on the computer while protecting Rivas's right to a fair trial by conducting its own in camera inspection of the hard drive. Id. at ¶ 17. The cause is before the court upon our acceptance of the state's appeal. *State v. Rivas*, 116 Ohio St.3d 1455, 2007-Ohio-6803, 878 N.E.2d 33.

## Proposition of Law

{¶ 8} On appeal to this court, the state contends that the trial court properly denied Rivas's motion to compel discovery because the hard drive contained confidential law enforcement investigatory records protected from disclosure under the Public Records Act in R.C. 149.43(A)(1)(h). According to the state, Rivas also failed to meet his burden to show that the discovery provided by the state was incomplete or otherwise inaccurate, and therefore Crim.R. 16(B) did not require an inspection of the computer's hard drive.

{¶ 9} Rivas maintains that R.C. 149.43(A)(1)(h) relates to public records requests and does not protect police records from discovery in the course of

4

litigation. He urges that the plain language of Crim.R. 16(B)(1)(c) permits him to inspect and copy the hard drive, explaining that the rule requires discovery of tangible evidence that is material to the preparation of his defense. Further, Rivas asserts that the hard drive is material evidence because his expert's testimony established specific concerns regarding the accuracy of the transcripts that represented the communications between Wilson and Rivas.

{¶ 10} We are called upon to consider whether, in a case in which the prosecutor has complied with its duty to provide discovery by delivering a transcript of evidence from the hard drive of a police computer, the accused has a right to obtain a mirror image of the computer hard drive without making a prima facie showing that the information in the transcript is false, incomplete, adulterated, or spoliated.

**Law and Analysis**

{¶ 11} Crim.R. 16(B)(1)(c) governs the disclosure of documents and tangible evidence by a prosecuting attorney: "Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant." Thus, as relevant to this case, Crim.R. 16(B)(1)(c) permits the accused to inspect tangible evidence that is material to the preparation of his defense.

{¶ 12} The question of which party bears the burden of going forward with evidence when the accused seeks to verify the discovery provided by the state pursuant to Crim.R. 16(B)(1)(c) appears to be one of first impression in this court. However, in *Chillicothe v. Knight* (1992), 75 Ohio App.3d 544, 550, 599 N.E.2d 871, the court held that it is the accused who bears the initial burden of

establishing a prima facie case of materiality before Crim.R. 16(B) requires the state to turn over tangible evidence.

{¶ 13} Further, Rule 16(a)(1)(E) of the current Federal Rules of Criminal Procedure, which is analogous to Crim.R. 16(B)(1)(c), requires that "the defendant show[ ] that disclosure of the document or tangible object is material to the defense" before it requires the government to produce tangible evidence in its possession. Fed.R.Crim.P. 16 Advisory Committee Note on the 1974 Amendment. Federal courts interpreting Fed.R.Crim.P. 16(a)(1)(E) and its predecessor provision, Fed.R.Crim.P. 16(a)(1)(C), Advisory Committee Notes on the 2002 Amendments, have held that the accused bears the burden of making a prima facie showing of entitlement to the materials sought in discovery before the rule requires the government to produce them. " 'To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality.' " *United States v. Zone* (C.A.9, 2005), 403 F.3d 1101, 1107, quoting *United States v. Mandel* (C.A.9, 1990)*,* 914 F.2d 1215, 1219; *United States v. Thompson* (C.A.7, 1991), 944 F.2d 1331, 1341 ("To successfully press a claim that the government violated [Fed.R.Crim.P. 16(a)(1)(C)], the defendant must make at least a *prima facie* showing that the requested items are material to his defense"); *United States v. Carrasquillo-Plaza* (C.A.1, 1989), 873 F.2d 10, 12 ("defendant did not make a request, together with 'a prima facie showing of materiality,' for the statements as required under [Fed.R.Crim.P 16(a)(1)(C)]"); *United States v. Buckley* (C.A.5, 1978), 586 F.2d 498, 506 ("Contrary to Buckley's assertion that Rule 16(a)(1)(C) 'mandate(s) the production of such documents upon request,' it is incumbent upon a defendant to make a Prima facie showing of 'materiality' in order to obtain discovery").

{¶ 14} Moreover, in other situations in which the accused asserts that the government withheld or destroyed evidence, this court has held that the accused bears the burden of establishing his case. The defendant bears the burden of

showing that the state acted in bad faith in destroying potentially useful evidence, *State v. Geeslin,* 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, at ¶ 14, and of showing that the state withheld favorable and material evidence. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 338-339. Mere speculation does not meet the accused's burden to show that the withheld evidence is material. Id. at ¶ 339; *State v. Jackson* (1991), 57 Ohio St.3d 29, 33, 565 N.E.2d 549, quoting *United States v. Agurs* (1976), 427 U.S. 97, 109-110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (" 'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense' ").

{¶ 15} Similarly, to show spoliation of evidence, the "proponent must first establish that (1) the evidence is relevant, (2) the offending party's expert had an opportunity to examine the unaltered evidence, and (3) even though the offending party was put on notice of impending litigation, this evidence was intentionally or negligently destroyed or altered without providing an opportunity for inspection by the proponent." *Simeone v. Girard City Bd. of Edn.*, 171 Ohio App.3d 633, 2007-Ohio-1775, 872 N.E.2d 344, at ¶ 69. The burden of proof falls on the party alleging spoliation.

{¶ 16} Thus, pursuant to a Crim.R. 16(B)(1)(c) discovery request, when a prosecutor has provided a written transcript that purports to accurately reflect data stored on a computer hard drive, a court may not order an examination of the computer hard drive unless the defense makes a prima facie showing that the state has provided false, incomplete, adulterated, or spoliated evidence.

{¶ 17} Rivas presented no evidence that the state refused to produce material evidence or that it provided him with false, incomplete, adulterated, or spoliated evidence. Although he makes much of the fact that Wilson continued to use the computer after his arrest and that rebooting a computer changes the data in thousands of files used to start up a computer system, Rivas failed to demonstrate

that rebooting a computer would alter the content of the e-mails or files at issue here. Further, even his own expert agreed that "if the officer testified that he reviewed these chats, that they were obviously on his computer screen, he reviewed them immediately after and they do represent an accurate replication of those conversations," continuing to use and reboot the computer would not have affected the accuracy and integrity of the hard copy of the communications produced by the state in its discovery. Rather than specifically testifying that any evidence had in fact been altered, Rivas's expert explained that he could establish the falsification of the state's discovery – assuming any falsification had actually occurred – only by examining the hard drive of the state's computer. However, speculation and conjecture regarding the possibility of material evidence appearing on the hard drive do not demonstrate any inaccuracy in the discovery that the state provided so as to entitle Rivas to inspect the hard drive and verify the accuracy of the transcript. Cf. *United States v. Persico* (E.D.N.Y.2006), 447 F.Supp.2d 213, 217 ("Basing discovery requests on nothing more than mere conjecture renders any request for information outside the ambit of Rule 16 a non-starter"). *Persico* involved a similar factual situation, as the discovery sought included "electronic surveillance recordings and reports, physical surveillance reports and photographs, the names of certain confidential sources with related reports and law enforcement notes, and various telephone toll records, pen register and pager information," and the defendants contended that only they could discern the existence of impeachment or exculpatory evidence within these materials. Id. at 217-218. Noting the government's representations that it had complied with its discovery obligations, the court explained that "the mere claim that the items sought are 'material' is not enough." Id.

{¶ 18} Ultimately, this is not a case about false or incomplete discovery or a case involving the denial of due process or the violation of Crim.R. 16(B). Here, the state has fully complied with and provided all the discovery required by

Crim.R. 16(B). However, based on the speculation of an expert witness and Rivas's unsupported assertion that the transcript has been altered, the court of appeals concluded that Rivas had a right to verify the discovery provided by the state. The appellate court's decision makes the wrong presumption about discovery. The presumption should be that counsel comply with our rules of discovery. Presuming the state's lack of compliance with discovery based on an assertion by an opposing party, and ordering the state to verify its discovery on such an assertion, sends the wrong message to the legal community and does not represent the law of this state.

## Conclusion

**{¶ 19}** In this case, after having received a written transcript purporting to reflect a series of chat-room conversations from the hard drive of a police computer and a compact disc containing an electronic version of files from that hard drive, Rivas asserted a right to verify the accuracy and completeness of the discovery with which he had been provided by obtaining a mirror image of the computer hard drive.

**{¶ 20}** However, Rivas failed to provide any evidence to support his allegation that what had been provided to him during the course of discovery lacked accuracy, authenticity, or completeness, and he destroyed or discarded his own computer hard drive, which would have given him the ability to make a prima facie showing that the state had provided false, incomplete, adulterated, or spoliated evidence. Where a party has received discovery pursuant to Crim.R. 16(B)(1)(c), a trial court will not order production of a mirror image of a computer hard drive without a prima face showing that false, incomplete, adulterated, or spoliated evidence has been provided. Here, Rivas submitted a motion to compel discovery that lacked a sufficient evidentiary basis, and he has therefore failed to satisfy his burden of proof.

**{¶ 21}** Because the state has provided a printed copy of the transcript of the conversations in this instance, and because Rivas has failed to meet his burden of proof to show that the state has provided false, incomplete, adulterated, or spoliated evidence, the state has complied with its obligations pursuant to Crim.R. 16(B)(1)(c), and access to a mirror image of the hard drive of the police computer is not material to the preparation of the defense. We therefore reverse the judgment of the court of appeals.

Judgment reversed.

LUNDBERG STRATTON, O'CONNOR, and LANZINGER, JJ., concur.

MOYER, C.J., and PFEIFER and CUPP, JJ., dissent.

_____

**CUPP, J., dissenting.**

**{¶ 22}** Because the majority's holding contrasts with the plain language of Crim.R. 16(B)(1)(c) and because appropriate mechanisms otherwise exist within the Criminal Rules to safeguard from disclosure information not relevant to the defendant's defense, I must respectfully dissent.

**{¶ 23}** There is no requirement in the discovery provisions of the Criminal Rules that a defendant who wishes to verify the accuracy of the printed version of electronic data stored on a state's computer hard drive must first make a prima facie showing that the state provided false, incomplete, adulterated, or spoliated evidence. Although defendant's basis for asserting a discrepancy between the printed version of the data and the version that resides on the computer hard drive may seem unusual, there is no justification for creating, as the majority opinion does, a permanent judicial gloss over the plain language of the discovery rules to short-circuit defendant's discovery request. Moreover, imposing such a standard ignores the plain language of the rule by imposing obligations on the defendant beyond the rule's "materiality" standard.

**{¶ 24}** The only limitations in Crim.R. 16(B)(1)(c) are that evidentiary materials must be in the state's possession and must be (1) material to the preparation of defense, (2) intended for use by the prosecuting attorney as evidence at the trial, or (3) obtained from or owned by the defendant.[1] In this case, the computer hard drive was in the state's possession and was material to defendant's defense theory. Further, the prosecutor intended to use, in printed form, the data contained on the hard drive as part of the state's evidence. Crim.R. 16(B)(1)(c). In contrast to the majority's holding, nothing in the text of Crim.R. 16(B)(1)(c) requires a defendant to demonstrate any threshold indicia of unreliability of the challenged evidence in the state's custody. The trial court should have ordered the state to produce the hard drive for the defendant's inspection or copying. As the appellate court recognized, "forcing a litigant to rely upon an adverse party's representation that a transcript" is accurate without allowing any verification of that accuracy is inconsistent with general notions of a fair trial. *State v. Rivas*, 172 Ohio App.3d 473, 2007-Ohio-3593, 875 N.E.2d 655, ¶ 2.

**{¶ 25}** Notwithstanding, the state has legitimate reason to prevent defendant's unrestricted access to the data on the computer hard drive. According to the state, the computer hard drive that contains the data sought by defendant also contains data that pertain to investigations not related to defendant. Simply because a defendant is allowed to inspect and copy the evidence under Crim.R. 16 does not mean that his access to the evidence must be free of all restrictions.

---

1. The initial obligation to demonstrate that the requested disclosure of a document or tangible object is material to the preparation of a defense has always been placed on the defendant. See, e.g., Crim.R. 16(B)(1)(c) ("Upon motion of the defendant [a court shall permit discovery of documents and tangible items] which are material to the preparation of his defense * * * "); *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 435, 639 N.E.2d 83 (quoting the rule); *United States v. Rhoads* (C.A.8, 1980), 617 F.2d 1313, 1319 (concluding that a defendant failed to demonstrate the manner in which the desired materials were "material to the preparation" of the defense under former Fed.R.Crim.P. 16(a)(1)(C)).

Therefore, the defendant's access should be limited to prevent the disclosure of information pertaining to these other matters.

{¶ 26} The methods by which a court may limit a defendant's access to only the information needed for his defense are delineated in Crim.R. 16(E)(1) and (2): the use of protective orders and restrictions on the time, place, and manner of the inspection and copying of evidence. There has been no showing that the trial court in this instance could not have allowed Rivas access to the state's computer hard drive as required by Crim.R. 16(B)(1)(c) while simultaneously protecting the state's interest in not disclosing information pertaining to other investigations through the use of a protective order under Crim.R. 16(E). Indeed, the trial court's initial discovery order allowing for inspection had, in fact, contained the caveat that computer hardware would be inspected, printed, copied, or photographed only in the presence of and under the control of the Xenia Police Department.

{¶ 27} Although the exact form of protective measure – whether by in camera inspection, examination by a third-party expert, or any other means – is a decision best left to the sound discretion of the trial court examining the evidence and facts before it, the fact remains that such a safeguard exists within Crim.R. 16. Rather than improvising a standard that is unsupported by the plain language of the criminal rule and likely to have unforeseen consequences, we should hold that the safeguards specifically contemplated by the rule should be used to prevent disclosure of information not relevant to a defendant's defense.

{¶ 28} I must respectfully dissent.

MOYER, C.J., and PFEIFER, J., concur in the foregoing opinion.

_____

Stephen K. Haller, Greene County Prosecuting Attorney, and Elizabeth A. Ellis, Assistant Prosecuting Attorney, for appellant.

Law Office of Marc Mezibov, Marc D. Mezibov, and Stacy A. Hinners, for appellee.

_____