[Cite as *State v. Sharma*, 2021-Ohio-3436.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 20CAC110047 |
| | : | |
| ASHUTOSH SHARMA | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware Municipal
                            Court, Case No. 19TRC14848

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      September 28, 2021

APPEARANCES:

For Plaintiff-Appellee:              For Defendant-Appellant:

MELANIE TOBIAS                       SHAWN R. DOMINY
375 South High St.                   BRYAN A. HAWKINS
Columbus, OH 43215                   DOMINY LAW FIRM LLC
                                     7716 Rivers Edge Dr., Suite B
                                     Columbus, OH 43235

*Delaney, J.*

{¶1} Appellant Ashutosh Sharma appeals from the November 3, 2020 Judgment Entry of the Delaware Municipal Court incorporating the Court's September 15, 2020 Judgment Entry Denying Defendant's Motion to Dismiss. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶1} The following facts are adduced from the record of the August 14, 2020 hearing upon appellant's motion to dismiss and the parties' Agreed Stipulations for Motion Hearing filed August 12, 2020. The record of this case is replete with pretrial motions filed by appellant. The following procedural history addresses only those filings relevant to the instant appeal.

*Appellant's arrest and invalid breath tests*

{¶2} On November 3, 2019, Trooper Patterson of the Ohio State Highway Patrol arrested appellant for O.V.I. Patterson transported appellant to the Worthington Police Department for a breath test. Appellant was observed for an additional 20 minutes and submitted to a second breath test. The second test was also invalid. Patterson's statement of facts noted, "At no point during the breath test did [appellant] adhere to the instructions given to provide a proper test." T. 17-18.[1]

{¶3} Appellant was charged by Uniform Traffic Ticket (U.T.T.) with one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and one count of marked lanes pursuant to R.C. 4511.33, a minor misdemeanor. Appellant was summoned to appear for arraignment on November 8, 2019.

---

[1] The trooper's statement of facts was introduced at the evidentiary hearing as "Exhibit C" but the record is silent as to whether it was admitted. The trial court accepted Exhibit C as a statement of facts surrounding the stop and arrest.

{¶4} On November 8, 2019, appellant entered a plea of not guilty and filed a demand for discovery seeking, e.g., **"[a]ll** video and audio recordings from the facility where the defendant was taken for booking and other processing, including video from the BAC room" (emphasis in original).

{¶5} On January 30, 2020, appellant filed a motion to dismiss, asserting appellee "failed to preserve materially exculpatory evidence or has destroyed potentially useful evidence in bad faith, resulting in a violation of the defendant's right to due process of law." Specifically, appellant asserted that despite repeated timely requests for "police station video," appellee advised that a police station video was destroyed on or about December 4, 2019. Appellant argued appellee should have "taken steps" to preserve and obtain the video. Appellee responded with a memorandum in opposition.

{¶6}  The motion proceeded to evidentiary hearing.

*Facts adduced from the parties' stipulations: appellant sought BAC video*

{¶7} The parties stipulated to the following facts for purposes of the hearing on appellant's motion to dismiss.

{¶8} Trooper Patterson of the Ohio State Highway Patrol (OSHP) makes O.V.I. arrests in, e.g., Delaware County. It is a "regular practice" for troopers to take O.V.I. arrestees to the Worthington Police station. For O.V.I. arrests in Delaware County, Patterson delivers "an O.V.I. packet" to the Delaware City Prosecutor's Office ("Prosecutor") via electronic submission, "typically * * * within a few days of the arrest * * *."

{¶9} In the instant case, an O.V.I. packet relating to appellant's arrest was delivered to the Prosecutor "within a few days" of his arrest on November 3, 2019. The

O.V.I. packet included evidence tickets from the BAC Datamaster and Patterson's narrative report.  The cover page of the O.V.I. packet indicated the test site was 2512, i.e. the Worthington Police station. Patterson's narrative stated he took appellant to the Worthington Police station and appellant "did not adhere to the instructions for the breath test."

{¶10} Patterson "is aware" there are video cameras in the Worthington Police station, including "in the room of the Worthington Police station with the BAC Datamaster."

{¶11} The Prosecutor's Office received appellant's demand for discovery on November 7, 2019.

{¶12} On November 13, 2019, the Delaware City Prosecutor's Office received a letter from appellant's counsel requesting all video evidence in the case, specifying "cruiser video, police station video, jail video, body camera video, etc."

{¶13} The Prosecutor responded to discovery on November 21, 2019, via email to defense trial counsel.

{¶14} On December 9, 2019, the Prosecutor received a second letter from defense trial counsel specifically requesting the "Worthington Police station video" in the instant case (referred to hereafter as the "BAC video"). On that date, the Prosecutor's Office asked the Worthington Police Department for any relevant video from the date of appellant's arrest, "and was told that the processing room videos are only retained for 30 days." The next day, the Prosecutor's Office asked whether any video from appellant's arrest was possibly retained.

{¶15} On December 23rd, 2019, the Prosecutor advised defense trial counsel via letter that the BAC video requested from the  Worthington Police Department was destroyed on or around December 4, 2019.

*Facts adduced from evidentiary hearing on motion to dismiss: prosecutor's actions upon receiving letters*

{¶16} The parties' stipulations referred generally to the "Prosecutor's Office" and "the Prosecutor."  The prosecutor assigned to the instant case was Natalia Harris. As of the date appellant was charged, Harris had worked at the Prosecutor's Office for approximately three months and was previously employed as a prosecutor for the city of Cincinnati.

{¶17} In the Delaware office, Harris was responsible for prosecuting cases from the entire county of Delaware, in addition to the city of Delaware.  She therefore dealt with different police departments' policies, procedures, and forms. Some police departments have video cameras in the rooms in which the BAC machines are kept; others don't. Harris was not familiar "off the top of her head" with which departments had cameras and which did not.

{¶18} Harris testified at the hearing on appellant's motion to dismiss.  In the instant case, appellant was arrested by the OSHP and was taken to the Worthington Police Department to perform a breath test and to be processed.  Harris had no independent knowledge whether Worthington had a camera in the BAC room; she learned a camera existed during the pendency of this case.

{¶19} As of November 2019, her understanding of office protocol was that upon receipt of a discovery demand, two paralegals responded to the requests.  Actions taken by the paralegals included obtaining evidence such as cruiser videos, when applicable.

{¶20} In the instant case, she received a discovery request from defense trial counsel on November 13, 2019. She also recalled that she received two letters from counsel, although she was uncertain of the dates. Upon receipt of the first letter, she put it on her desk. In the meantime, paralegals addressed the discovery demand. Harris received a second letter from defense trial counsel approximately four weeks later.

{¶21} The trial court overruled appellant's motion to dismiss via judgment entry dated September 15, 2020.

{¶22} On November 3, 2020, appellant withdrew his pleas of guilty and entered pleas of no contest to the charges of O.V.I. and marked lanes. Appellant was sentenced to, e.g., 180 days in jail with 177 suspended on the condition that he completes a Driver Intervention Program.

{¶23} Appellant now appeals from the judgment entry of his conviction and sentence, incorporating the trial court's decision overruling his motion to dismiss.

{¶24} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶25} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT-APPELLANT'S MOTION TO DISMISS."

**ANALYSIS**

{¶26} Appellant argues the trial court should have dismissed the case against him because the prosecutor allegedly failed to respond to a discovery request in good faith, resulting in destruction of evidence. Appellant argues appellee, specifically the prosecutor, violated his due process rights by failing to preserve the BAC video in bad faith. We disagree.

{¶27} Due process guarantees fundamental fairness in the trial of a criminal defendant. *Lisenba v. California*, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166 (1941). In *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the State's failure to preserve evidence: "The Due Process Clause of the Fourteenth Amendment * * * makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * *." *Id.* at 57-58.

*The BAC video was "potentially useful"*

{¶28} The *Youngblood* Court therefore established two tests: one that applies when the evidence is "materially exculpatory" and one that applies when the evidence is "potentially useful." *State v. Doup*, 5th Dist. Knox No. 08 CA 13, 2009-Ohio-117, ¶ 9. If the State fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. If, on the other hand, the State fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith. *Id.*, citing *State v. Scurlock,* 5th Dist. Licking No. 05-CA-116, 2006-Ohio-4445, ¶ 29.

{¶29} The burden of proof is on the defendant to show the exculpatory nature of destroyed evidence. *Doup*, 2009-Ohio-117, ¶ 10, citing *State v. Birkhold,* 5th Dist. Licking No. 01 CA104, 2002-Ohio-2464; *State v. Hill*, 5th Dist. Stark No.1998CA00083, 1999 WL 174921 (March 8, 1999). To be materially exculpatory, evidence must at least " * * *

possess an exculpatory value that was apparent before the evidence was destroyed * * *." *Id.,* citing *State v. Colby,* 11th Dist. Portage No. 2002-P-0061, 2004-Ohio-343, ¶ 11, quoting *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

{¶30} Evidence is materially exculpatory "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *State v. Johnston,* 39 Ohio St.3d 48, 61, 529 N.E.2d 898 (1988), quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Mere speculation does not meet the accused's burden to show that the withheld evidence is material. *State v. Qirat*, 5th Dist. Licking No. 14-CA-72, 2015-Ohio-863, ¶ 41, citing *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 339; *State v. Rivas,* 121 Ohio St.3d 469, 2009–Ohio–1354, 905 N.E.2d 618, ¶ 14; *State v. Jackson,* 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991), *quoting United States v. Agurs* 427 U.S. 97, 109–110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ("'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense'").

{¶31} We note that before the trial court, appellant conceded the evidence is potentially useful.  Appellant described the destroyed BAC video as "potentially useful for multiple reasons:"

> * * * *.

> In the instant case, the destroyed police station video is potentially useful.  The police station video is potentially useful for

multiple reasons. First, the video would be objective evidence of whether [appellant] appeared to be under the influence as he interacted with law enforcement officers and took the breath test. Second, the video would show whether the officers engaged in a 20-minute observation period before the breath tests. Third, the video would show whether [appellant] was properly instructed on how to take the breath test. Fourth, the video would show whether [appellant] failed to adhere to the instructions, as alleged by the arresting officer.

\* \* \* \*.

Motion to Dismiss, Jan. 30, 2020, 3.

{¶32} Even as described by appellant, therefore, the BAC video is potentially useful at best, possibly as a basis to challenge the credibility of the officers' observations of appellant or to contrast appellant's performance at the traffic stop with his behavior later in the BAC room. By appellant's own characterization of the missing video, if it satisfied every detail contemplated by appellant, the tape would not have a reasonable probability of affecting the outcome of trial because it would have scant relevance to the critical issue whether appellant was under the influence at the time he operated the motor vehicle.

### The prosecutor did not act in bad faith

{¶33} As noted earlier, appellant conceded before the trial court that the BAC video is potentially useful. Motion to Dismiss, Jan. 30, 3030, 3. See, *Youngblood,* supra, 488 U.S. 51, 57 (1988) (potentially useful evidence is that "which no more can be said

than that it could have been subjected to tests, the results of which might have exonerated the defendant."). As previously recited, the State's failure to preserve "potentially useful" evidence violates a defendant's due process rights only when the police or prosecution act in bad faith. *Doup*, supra, at ¶ 13, citing *State v. Lewis*, 70 Ohio App.3d 624, 634, 591 N.E.2d 854 (4th Dist.1990).

{¶34} The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Doup*, supra, citing *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983) , internal citation omitted.

{¶35} It is the defendant who bears the burden of demonstrating bad faith on the part of the State for the destruction of the potentially useful evidence. *Id.*, citing *State v. Geeslin,* 116 Ohio St.3d 252, 254, 2007-Ohio-5239, 878 N.E.2d 1. When a defendant does not meet his burden of demonstrating bad faith on the part of the State, then the failure to preserve potentially useful evidence is not a violation of due process. *Id.*

{¶36} We have reviewed the record of the evidentiary hearing, including the testimony of the prosecutor, and found nothing rising to the level of bad faith. Appellant points to the prosecutor's failure to timely request and secure the BAC video, arguing, "* * * [T]he definition of bad faith in the context of this case is the failure to respond in good faith and with reasonable diligence to a specific discovery demand." Brief, 22. The term "bad faith," though, generally implies something more than bad judgment or negligence. *State v. Canter*, 5th Dist. Fairfield No. 01 CA 51, 2002-Ohio-3473, ¶ 13. "It imports a

dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Id.,* citing *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983), internal citation omitted.

{¶37} We agree with the trial court's finding that the prosecutor did not act in bad faith. Although the first letter from defense trial counsel was overlooked and/or the prosecutor misunderstood the office procedure for obtaining evidence, we find the record devoid of evidence of a dishonest purpose or intent to deceive or ulterior motive.

*We reject appellant's burden-shifting analysis*

{¶38} We have already noted that before the trial court, appellant conceded the evidence was potentially useful, and argued the prosecutor acted in bad faith in failing to act to preserve the BAC video. On appeal, appellant's argument in support of its claim of bad faith is based on the decision of the Tenth District Court of Appeals in *State v. Forest,* 36 Ohio App.3d 169, 522 N.E.2d 52 (10th Dist.1987). In *Forest,* the court of appeals shifted the burden to the State under certain circumstances and held as follows:

> Normally, * * * it is the accused who bears the burden of proof on both the exculpatory value of the evidence and that the evidence cannot be obtained by other reasonable methods. *Id.* at 489-490, 522 N.E.2d 52, 104 S.Ct. at 2534. Where * * * the state breaches its duty to respond in good faith to a defense request to preserve evidence, we believe the appropriate remedy is to shift to the state the burden of proof as to the exculpatory value of the evidence. See 2 LaFave

& Israel, Criminal Procedure (1984, Supp.1987), Section 19.5, at

107, fn. 65.5.

*City of Columbus v. Forest*, 36 Ohio App.3d 169, 173, 522

N.E.2d 52 (10th Dist.1987).

{¶39} As appellant acknowledges, however, this Court has consistently rejected the holding in *Forest* and held that the burden of proof is and remains on the defendant to show the exculpatory nature of the destroyed evidence. See, e.g., *State v. Birkhold,* 5th Dist. Licking No. 01CA104, 2002 WL 727154 (April 22, 2002); *State v. Hill*, 5th Dist. Stark No. 1998CA00083, 1999 WL 174921 (March 8, 1999); *State v. Antonellis*, 5th Dist. Licking No. 2005-CA-31, 2005-Ohio-5381, ¶ 10; *State v. Combs*, 5th Dist. Delaware No. 03CA-C-12-073, 2004-Ohio-6574, ¶ 19. We find no reason to depart from precedent in the instant case.

{¶40} Appellant also argues the instant case is analogous to *State v. Anderson*, 1st Dist. Hamilton No. C-050382, 2006-Ohio-1568, ¶ 13.  In that case, the defense filed a motion to preserve a video from the police station; the prosecutor took no action to preserve the video and it was destroyed in accord with department policy. The First District Court of Appeals found that where the defendant moves to have evidence preserved and the state destroys the evidence, the burden shifts to the state to show the solely inculpatory value of the evidence. *Id.* at ¶ 11. We disagree that *Anderson* is analogous to the instant case because, as the trial court noted, appellant did not file a motion to preserve the BAC video.  Nor was any court order issued to preserve the video.

{¶41} Instead, defense trial counsel sent the prosecutor two letters seeking the BAC video.  We decline to speculate on circumstances that aren't present here, but a

motion and order to preserve evidence would of course be of greater import to the prosecutor's duty to act in good faith than a letter from defense counsel which is noticed too late.

{¶42} We hold, therefore, that the destroyed evidence was neither materially exculpatory nor that the destruction of the potentially useful BAC video was in bad faith. The trial court's denial of appellant's motion to dismiss was therefore not in error.

## CONCLUSION

{¶43} Appellant's sole assignment of error is overruled and the judgment of the Delaware Municipal Court is affirmed.

By: Delaney, J.,

Baldwin, P.J. concurs.

Hoffman, J., concurs separately.

*Hoffman, J., concurring*

{¶44} I concur in the judgment reached by the majority under the facts of this case. However, I think this Court should consider adopting the burden shifting analysis of *City of Columbus v. Forest,* 36 Ohio App.3d, 169, 522 N.E.2nd 52 (10th Dist. 1987), as apparently the majority of appellate districts in our state have done.