[Cite as *Rocky River v. Brenner*, 2015-Ohio-103.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101253**

**CITY OF ROCKY RIVER**

PLAINTIFF-APPELLEE

vs.

**NICHOLAS A. BRENNER**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART AND REVERSED IN PART

Criminal Appeal from the
Rocky River Municipal Court
Case No. 13 TRC 03465

**BEFORE:** Jones, P.J., Keough, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** January 15, 2015

**ATTORNEY FOR APPELLANT**

John T. Forristal
P.O. Box 16832
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Andrew D. Bemer
Rocky River Law Director

BY: Michael J. O'Shea
Assistant Law Director - Prosecutor
Rocky River Law Department
21012 Hilliard Boulevard
Rocky River, Ohio 44116

Michael J. O'Shea
O'Shea & Associates Co., L.P.A.
19300 Detroit Road, Suite 202
Rocky River, Ohio 44116

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, Nicholas Brenner, appeals the trial court's decision to deny his motion to suppress. We affirm in part and reverse in part.

{¶2} In 2013, Brenner was charged with speeding, operating a vehicle while intoxicated ("OVI"), and driving under an OVI suspension. He was later charged with driving an automobile with a prohibited blood alcohol level ("BAC violation"). He filed two motions to suppress, and the trial court held two hearings on the motions. The trial court subsequently denied both motions.

{¶3} The following apposite facts were adduced at the motion hearings and from the record.

{¶4} On April 7, 2013, at approximately 2:20 a.m., Rocky River Police Officer Matthew Rancourt observed a vehicle traveling at a speed that appeared to be higher than the posted speed limit of 25 m.p.h. on Detroit Road in Rocky River. The officer positioned his cruiser behind the car and paced the car traveling 35 m.p.h. in the 25 m.p.h. zone. Patrolman Rancourt ran the license plate and determined that the vehicle owner had a suspended license due to a previous OVI conviction.

{¶5} Patrolman Rancourt initiated a traffic stop of the vehicle for the speed violation and driving under an OVI suspension. The officer testified that after he activated his overhead lights, the driver took an unusually long time to pull over. The dashcam in the crusier was activated when the officer turned on his overhead lights, but the audio on the dashcam was not working.

{¶6} Patrolman Rancourt identified the driver as Brenner, who was also the registered owner of the car. While speaking to Brenner, Patrolman Rancourt could smell an odor of alcoholic beverage "on or around" him and noticed that Brenner's eyes were bloodshot and

glassy. Brenner told the officer he had just come from a bar and was aware that his driving privileges were suspended. Brenner admitted to drinking three beers while at the bar.

{¶7} Patrolman Rancourt suspected that Brenner might be under the influence of alcohol, so he requested backup and asked Brenner to exit his vehicle for field sobriety testing. The dashcam video did not capture most of the field sobriety testing.

{¶8} Patrolman Rancourt testified that he began by administering the horizontal gaze nystagmus ("HGN") test. Patrolman Rancourt testified how he had been trained to administer the test. Based on the results of the HGN test, Brenner displayed six out of a possible six indicators that his level of intoxication was above the legal limit. Patrolman Rancourt next administered the one-leg stand test. At first, Brenner had difficulty maintaining his balance so he asked to move to another location and was then able to pass the test.

{¶9} Patrolman Rancourt then had Brenner perform the walk-and-turn test. Patrolman Rancourt testified that it takes two mistakes to fail the walk-and-turn test, which Brenner failed when he took 10 steps forward, instead of nine, and made an incorrect turn. Patrolman Rancourt placed Brenner under arrest.

{¶10} Patrolman Rancourt transported Brenner back to the station for processing and breath alcohol testing. An officer prepared the Intoxilyzer 8000 alcohol breath testing machine while Patrolman Rancourt went over the standard form, the BMV-2255, with Brenner. Patrolman Rancourt was not certified to administer breath alcohol tests on the Intoxilyzer 8000 machine. Patrolman Pavia performed the breath test and the machine registered Brenner's blood alcohol level above the legal limit.

{¶11} Patrolman Rancourt testified that in addition to the blood alcohol reading that the officer administering the test can see on the screen of the Intoxilyzer 8000, the machine

usually prints out the BMV- 2255 form with the BAC results filled in. The machine also sends an electronic copy of the results to the Ohio Department of Health ("ODH"), and the police department can access those results within a few days to weeks after the test is administered.

{¶12} On the evening of Brenner's test, the printer attached to the Intoxilyzer 8000 was not working and was not able to print out the results of the test. Patrolman Rancourt manually filled out the BMV-2255 form, but wrote "malfunction" on the line designated for the BAC test results. He testified that just the printer, not the machine itself, malfunctioned, so he indicated on the original charging ticket "malfunction of Intoxilyzer" and did not cite Brenner with a BAC violation. According to Patrolman Rancourt, although the machine's screen indicated that Brenner's BAC was above the legal limit, "without the actual printout, I didn't feel comfortable writing the citation until I had the * * * results from the machine." Patrolman Rancourt did not see the BAC results himself on the machine's screen, and testified that he remembered them being above the legal limit, but did not remember the exact number.

{¶13} The police report, which was part of the trial court record, indicated:

Brenner provided a sample at that time voluntarily, however, the Intoxilyzer 8000 malfunctioned, and the results of the breath test were not printed. * * * Ptl Pavia advised me [Pt. Rancourt] that he observed that both breath samples that Brenner provided were measured above a .130 BAC, however he could not recall the exact numbers.

{¶14} Lieutenant Craters testified that he was the head of the detective bureau and "took care of the technology portion of the department's internal network." He explained that the printer attached to the Intoxilyzer 8000's printer was installed by the ODH but was the same as a standard printer used by the police department for their network. Lieutenant Craters testified

that although he was not a certified operator on the Intoxilyzer 8000 and was off-duty when Brenner was arrested, based on his knowledge, the results of the tests were transmitted to the ODH. He further testified that the results from the state indicated that the machine performed a proper test.

{¶15} Sergeant Kirk Bunner testified that he is certified to operate the Intoxilyzer 8000, but did not take part in Brenner's testing. He came into the testing room after he found out the printer was not functioning properly, but was not able to get the printer to work. The printer was taken out of service until the ODH fixed it and the next OVI suspect, arrested the same day, was taken to another city for alcohol breath testing.

{¶16} The police received the results of the breath test from ODH on June 17, 2013, which showed that Brenner's BAC was .132. The police then cited Brenner with a BAC violation.

{¶17} Brenner filed two motions to suppress. The first one challenged his OVI charge. The second motion to suppress challenged whether the malfunctioning printer rendered the results from the Intoxilyzer 8000 inadmissible.

{¶18} The trial court issued a written opinion with findings of fact and conclusions of law, denying both motions to suppress. Brenner subsequently entered a plea of no contest to the charges and the trial court sentenced him to 180 days in jail, with 170 days suspended, suspended his license, placed him on three years of probation, and issued fines. The trial court stayed his sentence pending appeal.

{¶19} Brenner raises the following assignments of error for our review:

I. The trial court erred when it denied defendant's first motion to suppress * * * that challenged, inter alia, the officer's probable cause for the arrest.

II. The trial court erred when it denied defendant's second motion to suppress *

* * that challenged the breath test results from the Rocky River police department's Intoxilyzer 8000.

Standard of Review

{¶20} Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *State v. Treesh*, 90 Ohio St.3d 460, 472, 739 N.E.2d 749 (2001). Accordingly, reviewing courts must defer to the trial court findings of fact if competent, credible evidence exists to support the findings. *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995). A reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *Long* at 332.

Traffic Stop and OVI Arrest

{¶21} In the first assignment of error, Brenner argues that the police officer did not have reasonable suspicion to pull him over or probable cause to arrest him.

{¶22} It is well-settled that "[w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996).

{¶23} Patrolman Rancourt testified that he first observed Brenner speeding and paced him going 35 m.p.h. in a 25 m.p.h. zone. He also ran his "LEADS" report, which showed that

he had a suspended license.

{¶24} Brenner challenges the police officer's visual estimation of his speed, calling it unreliable. In *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, the Ohio Supreme Court held:

> A police officer's unaided visual estimation of a vehicle's speed is sufficient evidence to support a conviction for speeding in violation of R.C. 4511.21(D) without independent verification of the vehicle's speed if the officer is trained, is certified by the Ohio Peace Officer Training Academy or a similar organization that develops and implements training programs to meet the needs of law-enforcement professionals and the communities they serve, and is experienced in visually estimating vehicle speed.

*Id.* at syllabus.

{¶25} In *State v. Woods*, 2012-Ohio-5509, 982 N.E.2d 1305 (8th Dist.), this court, relying on *Jenney*, upheld a motion to suppress when the testifying officers, who paced the defendant's car for a couple of blocks before pulling him over for speeding, never testified about their training, certification, and experience in visually estimating vehicle speed. The trial court had found, in part, that the police officers did not have sufficient time or distance to use pacing as a reasonable means to determine the speed of the defendant's vehicle because they followed him for such a short distance. *Id.* at ¶ 22-25.

{¶26} Likewise, in this case, Patrolman Rancourt testified about his general training but did not testify about his training, certification, or experience in visually estimating vehicle speed. He also paced Brenner for only "about 20 seconds." Therefore, Patrolman Rancourt's visual estimation of Brenner's speed does not meet the *Jenney* standard.

{¶27} Our analysis does not end here, however, because Patrolman Rancourt also testified that he pulled Brenner over because he was driving under a suspended license. The trial court found that Patrolman Rancourt ran Brenner's LEADS, which showed Brenner's license

suspension, before he initiated the traffic stop. Although Brenner argues that Patrolman Rancourt's testimony "casts doubt" on the conclusion that he got the results of the LEADS printout before pulling Brenner over, the court was in the best position to evaluate the credibility of the officer's testimony on this point, and we decline to substitute our judgment for that of the trial court. *See State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992); *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). Therefore, we find that the initial stop was lawful.

**{¶28}** Brenner also argues that the police did not have probable cause to arrest him for OVI. As an initial matter, Brenner claims the officer did not have enough reasonable suspicion that he was impaired to conduct field sobriety tests and the tests the officer conducted did not comport with the National Highway Traffic Safety Administration's ("NHTSA") guidelines. We disagree with both claims.

**{¶29}** Once a police officer has stopped a vehicle for even a minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if the officer "'has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there were clear symptoms that the detainee is intoxicated.'" *State v. Evans*, 127 Ohio App.3d 56, 63, 711 N.E.2d 761 (11th Dist.1998), quoting *State v. Yemma*, 11th Dist. Portage No. 95-P-0156, 1996 Ohio App. LEXIS 3361, *8 (Aug. 9, 1996).

**{¶30}** In this case, Patrolman Rancourt testified that Brenner had glassy and bloodshot eyes and he could smell alcohol emanating from "on or around" him. Brenner was driving over the speed limit, around closing time for bars and under a suspended license. He admitted to being at a bar and consuming three beers. Therefore, we agree with the trial court's assessment that the officer had adequate reasonable suspicion to require Brenner to perform field sobriety

tests.

{¶31} Next, a prosecutor must show by clear and convincing evidence that a law enforcement officer has administered a field sobriety test in "substantial compliance" with the testing standards in order for the test to be admitted into evidence. R.C. 4511.19(D)(4)(b). "The state may demonstrate substantial compliance with the NHTSA standards 'through competent testimony and/or introducing the applicable portions of the NHTSA manual.'" *State v. Maloney*, 11th Dist. Geauga No. 2007-G-2788, 2008-Ohio-1492, ¶ 39, quoting *State v. Barnett*, 11th Dist. Portage No. 2006-P-0117, 2007-Ohio-4954, ¶ 22.

{¶32} Brenner claims that the city was unable to show that Patrolman Rancourt was in compliance because the dashcam videotape of the stop did not show that the officer was in compliance with the guidelines and because there was no audio on the tape. We disagree.

{¶33} As previously noted, the dashcam video did not capture most of the field sobriety tests. Therefore, the court had to rely on Patrolman Rancourt's testimony. The officer testified that he had been trained on the NHTSA guidelines, had conducted between 50 and 100 field sobriety tests in the past, and had Brenner perform the HGN, one-leg stand, and walk-and-turn tests within the NHTSA guidelines. We find no evidence that he conducted the tests outside of NHTSA guidelines, other than Brenner's self-serving interpretation of a small portion of the dashcam video. Therefore, the court was correct in finding that Patrolman Rancourt was in substantial compliance with NHTSA guidelines.

{¶34} Moreover, the trial court was in the best position to evaluate the evidence and we will not usurp its role. The trial court found the following supported a probable cause finding: Brenner was slow to stop his vehicle; he admitted he was coming from a bar and had consumed three beers; the time of night (2:20 a.m.); driving under an OVI suspension; bloodshot and glassy

eyes; the smell of alcohol emanating from his car; and in light of the results of his field sobriety test.[1]

**{¶35}** We agree with the trial court and find that the officer had probable cause to arrest Brenner for OVI and the trial court did not err in overruling Brenner's first motion to suppress.

**{¶36}** The first assignment of error is overruled.

<u>Intoxilyzer 8000</u>

**{¶37}** In the second assignment of error, Brenner argues that the trial court erred when it denied his second motion to suppress, which challenged the Intoxilyzer 8000 breath test results. In this motion to suppress, Brenner raised three issues specific to the Intoxilyzer 8000: (1) the police were not in strict compliance with ODH regulations; (2) the testing officer was not authorized to perform the test;[2] and (3) the Intoxilyzer 8000 is not reasonably reliable and/or the specific machine used in his test was not working properly.

<u>Background</u>

**{¶38}** An accused defending a charge that he or she operated a motor vehicle with a prohibited level of alcohol in his or her breath may not attack the general scientific reliability of breath-alcohol tests that have been conducted in accordance with methods approved by the director of ODH. *See generally State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984). But, recently, in *Cincinnati v. Ilg*, 141 Ohio St.3d 22, 2014-Ohio-4258, 21 N.E.3d 378, the Ohio Supreme Court clarified that while a generalized attack is not allowed, an accused is not precluded from attacking the reliability of the specific breath-testing machine that measured his or her blood-alcohol concentration. *Id.* at ¶ 31.

---

[1]The trial court also found that Brenner's speed supported a probable cause finding.

[2]Although Brenner raised the issue of whether the operator of the Intoxilyzer 8000 had the proper permit or access card at the second motion hearing, he does not raise it on appeal; therefore, we will not address this issue.

**{¶39}** In *Ilg*, the court explained that challenges to specific machines or specific test results, including the manner the test was conducted, the timing of the test, and the proper operation of the specific machine that was used in the testing are not precluded. *Id.* at ¶ 32. Thus, an accused may challenge "the accuracy, competence, admissibility, relevance, authenticity, or credibility of specific test results or whether the specific machine used to test the accused operated properly at the time of the test." *Id.* at the syllabus.

**{¶40}** The ODH has approved the Intoxilyzer 8000 as a reliable testing device for determining the breath-alcohol concentration of an individual suspected of driving while under the influence of alcohol. *See* R.C. 4511.19(D)(1)(b); *Ilg* at ¶ 18. "As a result, breath tests are given presumptive validity." *Cleveland v. Evans*, 8th Dist. Cuyahoga No. 100721, 2014-Ohio-4567, quoting *State v. Hill*, 4th Dist. Gallia No. 92 CA 30, 1993 Ohio App. LEXIS 2726, *5 (May 21, 1993). But the testing itself must be conducted in accordance with procedures adopted by the ODH. *State v. Butler*, 5th Dist. Stark No. 2013CA00053, 2013-Ohio-4451, ¶ 16. The Ohio Supreme Court has held that absent a showing of prejudice by the defendant, substantial, not rigid, compliance with ODH regulations is sufficient. *State v. Plummer*, 22 Ohio St.3d 292, 490 N.E.2d 902 (1986), syllabus. Every person accused of an offense involving an Intoxilyzer 8000 machine may challenge the accuracy and credibility of a breath test by showing that the breath-analyzer machine failed to operate properly at the time of testing or that the results had not been analyzed in accordance with methods approved by the director of ODH.

*Ilg* at ¶ 7.

**{¶41}** Whether "[t]he bodily substance withdrawn [was] analyzed in accordance with methods approved by the director of health," is not a jury question and is to be decided by the

court prior to trial. *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, ¶ 20. To make that determination, a trial court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. *Edwards* at ¶ 14, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 298, 720 N.E.2d 507 (1999); Evid.R. 101(C). Thus, a trial court may rely on hearsay and other evidence to determine whether alcohol test results were obtained in compliance with methods approved by the director of health. *Edwards* at ¶ 21. For example, in *Edwards*, the Ohio Supreme Court found that the magistrate at a suppression hearing was not precluded from considering the test-solution certificate in photocopy form to determine whether the state's chemical results complied with ODH regulations even though the photocopy did not comply with the rules of evidence.

Application to Case at Bar

{¶42} The crux of Brenner's argument is that the city had the burden to demonstrate that Patrolman Pavia substantially complied with ODH regulations in testing the concentration of alcohol on his breath and the trial court erred in finding that the city had made such a showing. Brenner bases his claim on the following: (1) evidence of noncompliance with ODH regulations; (2) the officer who performed the test did not testify at the hearing; and (3) Patrolman Rancourt wrote "Intoxilyzer malfunction" on the ticket and did not charge Brenner with a BAC violation. We will deal with each of these concerns in turn.

{¶43} Brenner claims that he was able to show evidence of noncompliance with applicable ODH regulations; therefore, evidence that he sought to offer for the purpose of showing that the machine was not in good working order on the date of his test was relevant to the admissibility of the test result. According to Brenner, the ODH's testing manual, titled "Intoxilyzer 8000 ODH Proficiency Test OH-5," defines a "complete, successful subject test" as one where the BAC results are printed. Because, Brenner argues, the printer in this case failed

to function, the methods approved by the director of health were not followed. We disagree. According to the testimony given at the hearing, the proficiency manual is a testing manual used by ODH to train operators of the Intoxilyzer 8000. The manual does not list a printed test result as an ODH regulation.

{¶44} That said, we do not find that the city showed that it was in substantial compliance with ODH regulations. Patrolman Pavia was subpoenaed to testify at the suppression hearing, but he did not appear to testify about the procedures he followed in performing the breath alcohol test. Instead, the city relied on the testimony of three officers, none of whom were involved in the actual testing and two of whom were not even certified to operate the machine.

{¶45} Patrolman Rancourt testified that the test was performed correctly and it was the printer, not the machine, that malfunctioned. He stated that Brenner's BAC results appeared on the Intoxilyzer 8000's screen but admitted he did not personally see the results and could not remember the exact number, .132, that the machine displayed. He also testified that the breath test went through and the test itself was valid and done correctly, but he was not certified to operate the machine.

{¶46} Lieutenant Craters testified that the machine sent the results of Brenner's test to ODH and the results from ODH "indicated that the machine performed a proper test." Lt. Craters was also not a certified operator, nor did he explain how he knew that the results from ODH "indicated that the machine performed a proper test." We are further concerned with the city's reliance on the fact that the machine displays the test results on its screen when Patrolman Pavia himself could not relay the exact number, .132, to Patrolman Rancourt.

{¶47} We are cognizant of the latitude allowed in suppression hearings with regard to reliance on hearsay and other evidence, but, in this case, the officers' testimonies were lacking.

No officer testified as to how the city was in substantial compliance with ODH regulations in performing the breath alcohol test. Patrolman Pavia, who was subpoenaed to appear, could have testified as to the testing procedures to show that the city was in compliance with ODH regulations. A representative from ODH could have testified with regard to concerns with that specific machine's and printer's performance, test results transmission, and how the machine "performed a proper test."

{¶48} Here, because Brenner offered evidence that raised the issue whether the specific machine was operating properly, the city had the burden to show that it complied with ODH regulations in conducting his breath alcohol test. It failed to do so.

{¶49} This case, however, does not stand for the proposition that every time a breath alcohol testing device's printer "malfunctions," the test results are per se inadmissible as evidence against an accused. Under the unique circumstances presented by this case, the testimony offered by the city did not establish that the police acted in substantial compliance with ODH regulations in performing Brenner's breath alcohol test. Therefore, the results of the alcohol breath test should have been suppressed and the trial court erred in overruling Brenner's second motion to suppress.

{¶50} The second assignment of error is sustained.

{¶51} Judgment affirmed in part and reversed in part. Case remanded. It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
LARRY A. JONES, SR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MELODY J. STEWART, J., CONCUR