[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati v. Ilg,* Slip Opinion No. 2014-Ohio-4258.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4258

THE CITY OF CINCINNATI, APPELLANT, *v.* ILG, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati v. Ilg,* Slip Opinion No. 2014-Ohio-4258.]**

*Criminal procedure—Discovery—Subpoenaed data from breath-analyzer machine.*

(Nos. 2013-1102—Submitted June 11, 2014—Decided October 1, 2014.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-120667, 2013-Ohio-2191.

_____

SYLLABUS OF THE COURT

The approval of a breath-analyzer machine by the director of the Ohio Department of Health as a device to test breath-alcohol concentration does not preclude an accused from challenging the accuracy, competence, admissibility, relevance, authenticity, or credibility of specific test results or whether the specific machine used to test the accused operated properly at the time of the test.

_____

**O'DONNELL, J.**

{¶ 1}   The city of Cincinnati appeals from a judgment of the First District Court of Appeals that affirmed a trial court order to exclude evidence obtained from an Intoxilyzer 8000 breath-analyzer machine as a sanction for its failure to comply with a discovery order directing the Ohio Department of Health ("ODH") to provide Daniel Ilg with its computerized online breath archives data, also known as "COBRA data," consisting of information transmitted by the machine to ODH for each breath test it performed.

{¶ 2}   In accordance with R.C. 4511.19(D)(1)(b), ODH approved the Intoxilyzer 8000 as a reliable testing device for determining the breath-alcohol concentration of an individual suspected of driving while under the influence of alcohol. In *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), we precluded an accused from presenting expert testimony attacking the general scientific reliability of breath-alcohol tests that have been conducted in accordance with methods approved by the director of ODH.

{¶ 3}   In this case, Ilg sought COBRA data from the specific Intoxilyzer 8000 machine that tested his breath in order to challenge whether it operated properly on the day of his arrest in an effort to establish that the test results in his case were inaccurate—not to question the scientific reliability of Intoxilyzer 8000 machines in general.

{¶ 4}   Every person accused of an offense involving an Intoxilyzer 8000 machine may challenge the accuracy and credibility of a breath test by showing that the breath-analyzer machine failed to operate properly at the time of testing or that the results had not been analyzed in accordance with methods approved by the director of ODH.  In this case, Ilg sought discovery of relevant, admissible evidence, and the trial court ordered the city to produce it, but because neither the city nor ODH complied with the order to produce, the trial court excluded the

2

results of his breath test, and the court of appeals upheld that decision. Here, the sanction is warranted, and we affirm the judgment of the appellate court.

**Facts and Procedural History**

{¶ 5} In the early morning hours of October 22, 2011, Daniel Ilg lost control of his vehicle while driving on Beekman Street in Cincinnati, Ohio, and struck a fence, a sign, and a pole. Officer Terry Jacobs, who investigated the accident, arrested Ilg for operating a motor vehicle while under the influence of alcohol. At the police station, Ilg submitted to a breath-alcohol test. An Intoxilyzer 8000 machine, serial number 80-004052, measured his breath-alcohol concentration at 0.143 grams of alcohol per 210 liters of breath, beyond the amount permitted by law of 0.08 grams of alcohol per 210 liters of breath.

{¶ 6} As a result of the Intoxilyzer 8000 results, the city charged Ilg with operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), operating a vehicle with a prohibited level of alcohol in his breath in violation of R.C. 4511.19(A)(1)(d), and failing to maintain control of his vehicle in violation of R.C. 4511.202.

{¶ 7} Ilg entered a plea of not guilty in the Hamilton County Municipal Court and moved to suppress the results of his breath test. He also sought discovery of the subject test and instrument-check printouts and forms, diagnostic and calibration checks, maintenance, service, and repair records, radio frequency interference test records, and any computerized or downloaded information or data from the specific Intoxilyzer 8000 machine used to test him. He also sought data from that machine not only as it related to his test, but also for three years prior to his arrest and for three months following it.

{¶ 8} When the city did not produce these records, he subpoenaed Mary Martin, the program administrator for alcohol and drug testing at ODH. The subpoena requested that Martin produce "[a] copy of any and all records maintained by the Ohio Dept. of Health and the Ohio Depart. of [Public] Safety

relating to the Intoxilyzer 8000, serial number 80-004052, * * * including but not limited to: a. Any and all computerized online breath archives data, also known as 'COBRA' data." "COBRA data" refers to a database maintained by ODH that records information transmitted from each breath-analyzer machine for each breath test performed in the field, and it also includes personal information of other individuals the machine had tested.

{¶ 9} Ilg also subpoenaed records related to the machine's log-in history, repair and maintenance, radio frequency interference certification, and software changes or modifications, as well as any communications regarding the Intoxilyzer 8000 between ODH and the city of Cincinnati, the Ohio Department of Public Safety, and the manufacturer of the breath-analyzer machine. None of the parties—the city, ODH, or Martin—responded to the subpoena.

{¶ 10} Ilg then moved for sanctions and sought to exclude the results of his breath test because of the failure to comply with his discovery request and the subpoena he had issued. At a hearing held on August 27, 2012, Martin testified that the COBRA data is stored in read-only format and cannot be released without redacting the personal information of other test subjects. She asserted that ODH lacked the personnel and ability to copy the database and stated, "[A]t this time we don't have the ability to give the database out."

{¶ 11} As a result of that hearing, the court ordered ODH to disclose the records requested in the subpoena and advised the city that it would grant the motion for sanctions if it failed to produce the evidence.

{¶ 12} After the court's deadline for compliance had passed, Ilg again moved for sanctions, arguing that the city had not obeyed the court's order to disclose, and he requested the exclusion of the breath-test results as a sanction. At another hearing held on September 25, 2012, Martin admitted that she had not provided the COBRA data, claiming that ODH lacked the personnel and technology to copy the database, that it would require an additional employee and

approximately \$100,000 to produce a copy that could be released, and that even with those additional resources, the COBRA data would be technologically difficult to produce.

{¶ 13} The trial court found that Ilg had the right to challenge the reliability of his breath test but could not without the COBRA data generated by the Intoxilyzer 8000 that tested him. The trial court therefore excluded the breath-test results from evidence.

{¶ 14} On the city's interlocutory appeal, the appellate court determined that the court had not abused its discretion in ordering COBRA data to be produced, because Ilg needed it for trial preparation and had requested it in good faith, and the court found that it was relevant and that Ilg could not have obtained it without ODH cooperation. The appellate court further determined that Ilg had not sought to challenge the scientific reliability of all Intoxilyzer 8000s, but rather sought to discredit only the particular breath analyzer that Cincinnati Police used to test his breath-alcohol concentration. It also noted that a city is an instrumentality of the state and thus rejected the argument that the city could not be sanctioned for a discovery violation attributable to ODH. It concluded that exclusion of the breath-test result was reasonably calculated to protect Ilg's right to a fair trial.

{¶ 15} We accepted the city's discretionary appeal on one proposition of law: "*State v. Vega* prohibits defendants in OVI cases from making attacks on the reliability of breath testing instruments, thus a defendant cannot compel any party to produce information that is to be used for the purpose of attacking the reliability of the breath testing instrument."

## Claims of the Parties

{¶ 16} The city maintains that COBRA data is not discoverable in a criminal case, because it does not fall within the types of items that Crim.R. 16 requires the prosecution to produce. It asserts that the COBRA data is not

material to guilt or punishment and that there is no reasonable probability that producing it would alter the outcome of Ilg's trial, because pursuant to *State v. Vega*, 12 Ohio St.3d 185, 186, 465 N.E.2d 1303, this type of evidence is inadmissible for purposes of making a general attack on the reliability of a breath-testing machine. According to the city, the documents sought in discovery are not relevant to challenging the validity of Ilg's breath test, but rather relate to every person who had taken a breath test on that particular Intoxilyzer 8000 machine, and it urges that he has not demonstrated how data from other tests affect the validity of the results of his test.

{¶ 17} The city also contends that because evidence relevant to attacking the reliability of a breath-analyzer machine is not discoverable pursuant to Crim.R. 16, it cannot be the subject of a subpoena intended to provide additional discovery beyond that permitted by Crim.R. 16. And it maintains that compliance with the subpoena was impossible for ODH, and in any case, COBRA data is not relevant and Ilg could prepare for trial without it, as he sought only to engage in "a fishing expedition."

{¶ 18} Ilg contends that the city has failed to preserve for appeal any argument that the COBRA data was not discoverable pursuant to Crim.R. 16, that the data is inadmissible as not material to guilt or innocence, or that he abused Crim.R. 17 by issuing a subpoena to expand the scope of discovery. He maintains that COBRA data is discoverable pursuant to Crim.R. 16(B) because it is a relevant document, a tangible item, or the result of a scientific test. And it is not inadmissible pursuant to *State v. Vega,* Ilg argues, because he sought the COBRA data to challenge the reliability of the machine that tested him, not the general scientific reliability of all Intoxilyzer 8000s.

{¶ 19} Ilg further asserts that he has not abused Crim.R. 17 to expand the scope of discovery, but only issued the subpoena after the city failed to comply with his demand for discovery. And he urges that compliance with the subpoena

was not oppressive, because there is no evidence supporting the claim that it would be too costly to produce the COBRA data and ODH's online database shows that this machine has tested only 53 individuals, with more than 10 percent tested twice due to various errors.

**{¶ 20}** Accordingly, this case presents one narrow issue: whether an accused defending a charge that he operated a motor vehicle with a prohibited level of alcohol in his breath is precluded from attacking the reliability of the specific breath-testing machine that measured his blood-alcohol concentration.

### Relevant Statutes

**{¶ 21}** R.C. 4511.19(D)(1)(b) governs the admissibility of alcohol-test results and provides in relevant part:

> In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court may admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation. * * *

> The bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code.

In turn, R.C. 3701.143 provides that the director of ODH

> shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's whole blood, blood serum or plasma, urine, breath, or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, controlled substance, metabolite of a controlled substance, or combination of them in the person's whole blood, blood serum or plasma, urine, breath, or other bodily substance. The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses.

{¶ 22} Pursuant to this authority, ODH promulgated Ohio Adm.Code 3701-53-02(A)(3), approving the Intoxilyzer 8000 as an evidential breath-testing instrument for use in determining the concentration of alcohol in a person's breath for purposes of R.C. 4511.19.

{¶ 23} Construing substantively similar former versions of these statutes in *State v. Vega*, 12 Ohio St.3d 185, 188, 465 N.E.2d 1303, we noted that the General Assembly had "legislatively resolved the questions of the reliability and relevancy of intoxilyzer tests." The court explained:

> "[The judiciary must recognize] the necessary legislative determination that breath tests, properly conducted, are reliable irrespective that not all experts wholly agree and that the common law foundational evidence has, for admissibility, been replaced by statute and rule; and that the legislative delegation was to the Director of Health, not the court, [of] the discretionary authority

for adoption of appropriate tests and procedures, including breath test devices."

(First bracketed insertion sic.) *Id.* at 188-189, quoting *State v. Brockway*, 2 Ohio App.3d 227, 232, 441 N.E.2d 602 (1981). Because the legislature provided for the admissibility of intoxilyzer tests if analyzed in accordance with methods approved by the director of ODH, an accused may not present expert testimony attacking the general scientific reliability of approved test instruments. *Id.* at 189. But we also noted that Vega did not assert any claim of abuse of discretion by the director of ODH. *Id.* at 187, fn. 2.

{¶ 24} Nonetheless, in *State v. Tanner*, 15 Ohio St.3d 1, 6, 472 N.E.2d 689 (1984), we recognized that although an accused may not challenge the *general* accuracy and scientific reliability of the test procedure selected by ODH, the accused "may still challenge the accuracy of his specific test results." *Tanner* concerned the constitutionality of a former version of R.C. 4511.19(A)(2) that established a per se offense for driving with a prohibited blood-alcohol concentration. The court upheld the statute and explained that it did not impose a conclusive presumption of guilt, because the accused could challenge the accuracy of his test results and "[t]he jury may consider those specific test results, and all other relevant evidence, in ascertaining whether the state has shown beyond a reasonable doubt that the defendant has violated the statute." *Id.*

{¶ 25} Similarly, in *Columbus v. Taylor*, 39 Ohio St.3d 162, 163, 529 N.E.2d 1382 (1988), we noted that "[i]t is well-established that a defendant may challenge the accuracy of *his specific* test results." (Emphasis sic.) There, we concluded that the trial court had not abused its discretion by excluding an expert report giving the results of simulated testing of the accused using a different BAC Verifier machine from the one police used to test his breath. But in doing so, we emphasized that the expert had been allowed to testify that breath-alcohol

concentration test results can be inaccurate due to burping that contaminates the breath sample. *Id.* at 164-165.

**{¶ 26}** Our decision in *State v. French*, 72 Ohio St.3d 446, 650 N.E.2d 887 (1995), concerned the procedure for attacking the admissibility of a breath-test result based on the failure to substantially comply with Ohio Department of Health regulations on chemical testing. The court held that the failure to "challenge the admissibility of the chemical test results through a pretrial motion to suppress waives the requirement on the state to lay a foundation for the admissibility of the test results at trial." *Id.* at paragraph one of the syllabus. In those circumstances, we explained, "[t]he chemical test result is admissible at trial without the state's demonstrating that the bodily substance was withdrawn within two hours of the time of the alleged violation, that the bodily substance was analyzed in accordance with methods approved by the Director of Health, and that the analysis was conducted by a qualified individual." *Id.* Nonetheless, we stated that this waiver "does not mean, however, that the defendant may not challenge the chemical test results at trial under the Rules of Evidence. Evidentiary objections challenging the competency, admissibility, relevancy, authenticity, and credibility of the chemical test results may still be raised." *Id.* at 452.

**{¶ 27}** We reaffirmed our holding in *French* in *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752, noting that an accused may move to suppress an alcohol-content test based on noncompliance with regulations governing the maintenance and operation of testing devices. *Id.* at ¶ 11, citing *French* at 449. And we further indicated that "a defendant at trial may challenge breath-test results on grounds other than that the results were illegally obtained because they were obtained in noncompliance with the director's rules. For example a defendant may argue at trial that the particular device failed to operate properly at the time of testing." *Id.* at ¶ 19.

**{¶ 28}** As these cases demonstrate, the General Assembly has delegated to the director of ODH the authority to adopt appropriate tests and procedures to chemically analyze specified bodily substances to ascertain the concentration of alcohol, drug, controlled substance, or combination thereof in those bodily substance and issue permits to qualified persons to perform those analyses. As we indicated in *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 32, "the General Assembly instructed the Director of Health—and *not* the judiciary—to ensure the reliability of alcohol-test results by promulgating regulations precisely because the former possesses the scientific expertise that the latter does not." (Emphasis sic.) The director has decided that Intoxilyzer 8000s, when used in accordance with department regulations, are capable of accurately measuring breath-alcohol concentrations, Ohio Adm.Code 3701-53-02(A)(3), and an accused therefore may not attack the general scientific reliability of that machine test, *Vega*, 12 Ohio St.3d at 186, 465 N.E.2d 1303.

**{¶ 29}** But although the court announced in *Vega* that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument," *id.* at 190, the director's approval of the Intoxilyzer 8000 does not preclude an accused from challenging the accuracy, competence, admissibility, relevance, authenticity, or credibility of specific tests results at issue in a pending case. We have recognized that an accused may seek to suppress the results of his breath test if the sample was not given within two hours of the time of the alleged violation and if it was not analyzed in accordance with regulations governing the maintenance and operation of testing devices. *French*, 72 Ohio St.3d 446, 630 N.E.2d 887, at paragraph one of the syllabus; *Edwards* at ¶ 11. And in *Edwards*, we noted that an accused may attack the breath-test results by attempting to prove that "the particular device failed to operate properly at the time of testing." *Edwards* at ¶ 19. Nothing in either the relevant statutes or our caselaw precludes an accused from attacking the accuracy, competence, admissibility, relevance,

authenticity, or credibility of the specific breath-test result rendered by an Intoxilyzer 8000.

{¶ 30} In this case, the COBRA data that Ilg sought in the subpoena expressly targeted evidence related solely to the Intoxilyzer 8000 that the city used to perform his breath test. Ilg's expert, Alfred E. Staubus, Pharm.D, Ph.D., provided the only evidence in the record on that issue and averred that "[i]n order to be able to evaluate the reliability of the test, this particular Intoxilyzer 8000 machine, and the testing procedures in this case, all of the documents requested of the State and ODH are necessary." No one from ODH gave any testimony suggesting that the COBRA data is not, in fact, relevant to demonstrating the inaccuracy of Ilg's breath test on the night of his arrest. Thus, the record supports the trial court's finding that Ilg could not challenge the reliability of his breath test without the COBRA data generated by the Intoxilyzer 8000.

**Conclusion**

{¶ 31} By enacting R.C. 4511.19(D)(1)(b), the General Assembly delegated to the Ohio Department of Health the responsibility of determining which breath-test procedures and devices reliably determine the breath-alcohol concentration of an individual suspected of driving while under the influence of alcohol. Relying on this delegation of authority, *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303, precluded an accused from presenting expert testimony to attack the general scientific reliability of breath-alcohol tests conducted in accordance with methods approved by the director of the Ohio Department of Health. However, the approval of a breath-analyzer machine by the director of the Ohio Department of Health as a device to test breath-alcohol concentration does not preclude an accused from challenging the accuracy, competence, admissibility, relevance, authenticity, or credibility of specific test results or whether the specific machine used to test the accused operated properly at the time of the test.

**{¶ 32}** Thus, an accused may challenge the accuracy of specific test results rendered by a breath-analyzer machine. Here, neither the statute nor our caselaw precludes Ilg from showing that the Intoxilyzer 8000 that tested his breath provided an inaccurate result, and he is entitled to discovery of relevant evidence to support his claim that the Intoxilyzer 8000 machine used to test him failed to operate properly.

**{¶ 33}** Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'NEILL, J., concurs in judgment only.

_____

Terrance A. Nestor, Acting City Solicitor, Charles A. Rubenstein, City Prosecutor, and Jennifer Bishop and Emily Woerner, Assistant City Prosecutors, for appellant.

The Law Office of Steven R. Adams, Steven R. Adams, and Marguerite Slagle, for appellee.

Michael Dewine, Attorney General, Eric E. Murphy, State Solicitor, and Jeffrey Jarosch, Deputy Solicitor, urging reversal for amicus curiae state of Ohio.

Paul A. Dobson, Wood County Prosecuting Attorney, and David E. Romaker Jr., Assistant Prosecuting Attorney, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.

Julia R. Bates, Lucas County Prosecuting Attorney, and Evy M. Jarrett, Assistant Prosecuting Attorney, urging reversal for amicus curiae Lucas County Prosecuting Attorney Julia R. Bates.

Mark Kitrick, urging reversal for amicus curiae Mothers Against Drunk Driving (MADD).

D. Timothy Huey; Kura, Wilford & Schregardus Co., L.P.A., and Sarah M. Schregardus; and Patricia J. Smith, urging affirmance for amicus curiae National College for DUI Defense.

Daniel J. Sabol and Jessica G. Fallon, urging affirmance for amicus curiae Ohio Association of Criminal Defense Lawyers.

_____