[Cite as *Bratenahl v. Osredkar*, 2017-Ohio-5811.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 104916

---

# VILLAGE OF BRATENAHL

PLAINTIFF-APPELLANT

vs.

# MICHAEL OSREDKAR, ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Cleveland Municipal Court
Case Nos. 2014 TRC 024127 and 2014 TRC 040470

**BEFORE:** S. Gallagher, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** July 13, 2017

**ATTORNEYS FOR APPELLANT**

Marco A. Tanudra
Village of Bratenahl Special Prosecutor
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

**For Michael Osredkar**

Joseph D. Hada
2802 SOM Center Road, Suite #102
Willoughby Hills, Ohio    44094

Kenneth A. Bossin
1392 SOM Center Road
Cleveland, Ohio    44124

**For Daniel Evans**

Leslie Johns
Hector G. Martinez
The Martinez Firm
4230 State Route 306, Suite 240
Willoughby, Ohio    44094

SEAN C. GALLAGHER, J.:

**{¶1}** The village of Bratenahl appeals the dismissal of two consolidated cases. We reverse the dismissal and remand for further proceedings.

**{¶2}** Michael Osredkar was charged with driving under the influence of alcohol/drugs, in violation of Bratenahl Codified Ordinance 333.01(A)(1)(a); driving under the influence of alcohol/drugs breath .08-.17, in violation of Bratenahl Codified Ordinance 333.01(A)(1)(d); and driving in marked lanes in violation of Bratenahl Codified Ordinance 333.08. Daniel Evans was charged with driving under the influence of alcohol/drugs, in violation of R.C. 4511.19(A)(1)(a); driving under the influence of alcohol/drugs breath .17 or greater, in violation of R.C. 4511.01(A)(1)(d); and driving in marked lanes, in violation of R.C. 4511.25.

**{¶3}** Both Osredkar and Evans sought discovery related to the breathalyzer tests conducted at the time of their arrests, and eventually the trial court ordered the Ohio Department of Health ("ODH"), the entity responsible for maintaining the breathalyzer data, to produce "any and all computerized online breath archives, including but not limited to any and all data for any aspect of the testing process, known as 'COBRA' data for the Intoxilyzer 8000 No. 80-004027[,]" and the "full schema relating to any COBRA database used in the State of Ohio by the [ODH]." The identified Intoxilyzer 8000 was the machine upon which both men were tested. After several hearings, the trial court

concluded that the ODH had failed to provide responsive discovery, and over the village's objection, all claims against both defendants were dismissed.

{¶4} The term "COBRA data" (the acronym stands for "the Computerized Online Breath Archive") refers to " a database maintained by ODH that records information transmitted from each breath-analyzer machine for each breath test performed in the field, and it also includes personal information of other individuals the machine had tested." *Cincinnati v. Ilg*, 141 Ohio St.3d 22, 2014-Ohio-4258, 21 N.E.3d 278, ¶ 8.   The schema is simply a summary description of the data contained in the database — an abstract of the data within the database.   Nothing in the record indicates if the ODH maintains a schema as part of its records or generates the abstract upon request.   There is no dispute in this case that according to *Ilg*, a defendant has the ability to seek discovery of the COBRA data relative to the machine that was used to produce the breath-alcohol concentration result for the purpose of demonstrating the accuracy of the defendant's individual test result.   *Id.* at ¶ 30.

{¶5} The issue presented in this appeal differs from *Ilg*.   In this case, the defendants obtained a court order compelling the ODH to produce any and all COBRA data and the full schema relating to any database in existence in Ohio that contains COBRA data — without any explanation from the defendants as to the relevancy of such a broad request.   In *Ilg*, the issue was limited to the COBRA data as it related to an individual test result.   The trial judge in this case, an experienced and respected jurist, went to great lengths in a good faith effort to uncover exactly what information was

created or compiled by the ODH. This focus, much at the defense's urging, led to discovery orders that went beyond the scope of the *Ilg* discussion.

{¶6} ODH attempted to comply. The village provided the defendants copies of the entire prosecution file, including the citation, police reports, and related forms; the testing printouts from the Intoxilyzer 8000 used in both cases; and the impaired driver reports. In addition, the ODH produced the COBRA data for the particular Intoxilyzer 8000 related to each defendant, including all diagnostics, error logs, log-in history repair, maintenance, service and calibration records, all exception codes and their explanation, and the software history. The defendants also received training manuals used by the vendor who produces the Intoxilyzer 8000 machine and the COBRA manuals provided to the ODH from the vendor.

{¶7} At the final hearing on the discovery violation, the ODH claimed it had provided both defendants everything in its possession relating to the COBRA data. The defense's expert disagreed and claimed that either the ODH was purposefully deleting the individual breath-profile information from the database or that ODH's employees deleted the information when uploading the data to the ODH's servers. A breath profile is a graphical representation of the amount of pressure being blown into the Intoxilyzer 8000, as measured by the volume in liters per second or minute that reflects how much air is being expelled into the machine, and the alcohol content as a function of time. According to the defense's expert, the breath profile is used to determine if testing errors

occurred. Osredkar and Evans claim that the lack of the breath profiles prejudiced their ability to defend against the charges.

{¶8} The ODH responded that the breath profiles for Osredkar's and Evans's tests were not maintained by the ODH because the software feature that required the use of the breath profiles was not enabled in Ohio. At oral argument, it was suggested that the feature is now or has been activated in Ohio, but that fact is not part of the record. The Intoxilyzer 8000 units are sold to various jurisdictions around the country, but the enabled features are dependent on the individual jurisdiction's needs and willingness to pay. The village analogized the Intoxilyzer 8000 features to that of a standard cable television box — all cable boxes are capable of receiving every channel, but only those channels purchased are unlocked for the end user. Instead of relying on the breath profiles to determine sampling errors, the ODH has adopted other prophylactic measures.

{¶9} Not content to rely on the missing breath profiles alone, and as the basis for the motion to dismiss, Osredkar and Evans claim that there is more than one database containing COBRA data (only one was allegedly produced, although only one was referenced in the order to compel), the data produced lacked tamper-stamps to prove to the defense's expert that the data was authentic, and the schema received was an extract from the schema (so the description of the database, as schema was defined, was actually an abstract of an abstract). The expert then claimed that the ODH employee responsible for maintaining the COBRA data was not versed in the right computer programming language to even know what information was stored in the databases. The defense

expert opined that the employee, who was responsible for uploading information stored on the individual Intoxilyzer 8000 machines to the ODH's main servers, could have deleted the breath-profile data in the uploading process. The individual Intoxilyzer 8000 machines have an extremely limited, onboard storage capacity, only about 8 megabytes, which for the sake of perspective, is equivalent to the size of between 1 and 6 standard photographic files.[1] Periodic uploads to the ODH's servers were required to preserve information. Once it is verified that the data is uploaded to the ODH's servers, the individual Intoxilyzer 8000's memory is purged.

{¶10} With respect to the lack of tamper-stamps, which the defense expert believed necessary to prove that the state was not altering the data, no evidence was presented to substantiate the allegations that the ODH willfully tampered with the discovery information produced. "Mere speculation does not meet the accused's burden to show that the withheld evidence is material." *State v. Rivas*, 121 Ohio St.3d 469, 2009-Ohio-1354, 905 N.E.2d 618, ¶ 14.

> Pursuant to a Crim.R. 16(B)(1)(c) discovery request, when a prosecutor has provided a written transcript that purports to accurately reflect data stored on a computer hard drive, a court may not order an examination of the computer hard drive unless the defense makes a prima facie showing that the state has provided false, incomplete, adulterated, or spoliated evidence.

---

[1] Number of pictures that can be stored on a memory device, https://kb.sandisk.com/app/answers/detail/a_id/69/~/number-of-pictures-that-can-be-stored-on-a-memory-device (last visited June 27, 2017) (the file size of a standard photograph, in the most common file format for consumer cameras, ranges from 1.2 MB to 6.6 MB).

*Id.* at syllabus. The same principle applies to the COBRA data. The ODH averred at several hearings that the discovery provided accurately reflected the data it maintained.

{¶11} Only Evans attempted to distinguish *Rivas*. Evans claims that the defense has presented a prima facie showing that the state provided incomplete or spoliated evidence because the expert claimed the lack of the tamper-stamps indicated the data could be altered. This was the specific argument overruled in *Rivas*. The defendant's expert in *Rivas* explained that he could establish the falsification of the state's discovery only by examining the original source of the discovery material. *Id.* at ¶ 17. That argument was rejected because "speculation and conjecture regarding the possibility of material evidence" does not demonstrate any inaccuracy in the discovery that the state provided. *Id.* Nevertheless, under the defense's theory, the village deleted the breath profiles before the discovery order was issued. This raises the specter of analysis not considered by the trial court.

{¶12} The trial court granted both defendants' motions to dismiss based on allegations that the village failed to produce discovery in its possession under Crim.R. 16.[2] The trial court, however, did not consider any other sanction besides dismissal. The motions to dismiss did not even discuss another sanction from which the trial court

---

[2] Our jurisdiction over the notice of appeal is based on the village's right to appeal "any decision of the trial court in a criminal case" that grants a motion to dismiss "all or any part of an indictment." R.C. 2945.67. A decision to dismiss any part of the indictment is a final appealable order because it affects a substantial right and prevents a judgment on those charges. *In re S.J.*, 106

could choose. It is well settled that "a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, impose the least severe sanction that is consistent with the purpose of the rules of discovery." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 42, citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987). Although we understand the trial court's frustration, dismissal of all charges was not the least severe sanction.

{¶13} For example, in *Ilg*, 141 Ohio St.3d 22, 2014-Ohio-4258, 21 N.E.3d 278, the trial court's decision to suppress the evidence from the Intoxilyzer 8000 upon the state's failure to produce the data was affirmed. Suppression of the test results from the breathalyzer equipment, therefore, satisfied the purposes of Crim.R. 16. Further, the Ohio Supreme Court concluded that the defendant had demonstrated the necessity of the information in order to evaluate the reliability of his particular test because the ODH did not provide any evidence suggesting that the COBRA data was not relevant. *Id.* at ¶ 30. In this case, even if a discovery violation exists, the trial court erred by dismissing all the charges when the violation only impacted one aspect of the state's evidence for each defendant: the individual test results from the Intoxilyzer 8000.[3]

---

Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 13, citing R.C. 2505.02(B).

[3]Evans and Osredkar argue that the length of the discovery dispute alone demonstrates that dismissal of all charges was proper, but neither provided any citation to authority to support such a proposition of law. App.R. 16(A)(7).

{¶14} We agree with the village that the dismissal of all claims was not the least restrictive sanction available consistent with the purpose of discovery, if this indeed was a discovery violation. Other sanctions, including but not limited to, the possible suppression of the disputed evidence were available, but not considered. *See Ilg*; *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, 837 N.E.2d 752 (an offender may move to suppress an alcohol-content test based on noncompliance with regulations covering the maintenance and operation of testing equipment).

{¶15} Notwithstanding, the undisputed evidence demonstrated that the village did not commit a discovery violation. According to the defense's expert, the breath-profile data, the missing discovery forming the basis of the dismissal, was deleted. When considering whether a discovery violation occurred, courts must consider three factors: (1) whether the failure to disclose was willful; (2) whether foreknowledge of the undisclosed material would have benefitted the defendant in trial preparation; and (3) whether the accused was prejudiced by the late disclosure. *Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983). These factors simply do not apply in this case because there is no dispute that the information sought by the defense does not exist. The defense's expert opined that the information was deleted.

{¶16} The proper legal consideration, therefore, is not whether the village committed a discovery violation — one cannot expect a party to turn over that which was irrevocably deleted before the case was initiated — but whether the failure to preserve

evidence for trial rises to the level of a due process violation. This analysis, of course, depends on whether the lost or destroyed evidence involves "material exculpatory evidence" or "potentially useful evidence." *State v. Daniels*, 10th Dist. Franklin No. 14AP-326, 2015-Ohio-2649, ¶ 17, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 73. "Evidence is constitutionally material when it possesses 'an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Id.*, citing *Powell* at ¶ 74. If, on the other hand, "the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *Id.*, citing *Powell* at ¶ 77.

{¶17} The Intoxilyzer 8000 machines were capable of producing and storing a breath profile, but the ODH did not purchase that function from the vendor. Further, when the ODH uploaded data from the individual machines to the ODH servers, if the breath profiles were saved on the individual machine, the ODH did not retain the information because, as a matter of policy, Ohio uses other mechanisms to ensure the accuracy of the individual test results. In situations in which the accused asserts that the government withheld or destroyed evidence, the Ohio Supreme Court has held that the offender bears the burden of establishing his case. The defendant must show that the state acted in bad faith in destroying potentially useful evidence. *Rivas*, 121 Ohio St.3d 469, 2009-Ohio-1354, 905 N.E.2d 618, at ¶ 14, citing *State v. Geeslin*, 116 Ohio St.3d

252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 14. The defendant must also prove that the withheld evidence is both favorable and material. *Id.*, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 338-339.

{¶18} This burden was not met because the defendants framed this issue solely under Crim.R. 16 and the ODH's failure to produce all information responsive to the defendants' overly broad requests. A discovery violation under Crim.R. 16 occurs when there is evidence demonstrating that the state failed to produce documents that should have been produced in discovery. *Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, at ¶ 1. In this case, the village consistently certified to the trial court that it did not possess the requested documents. This is not a discovery violation case. The appropriate inquiry is whether the failure to maintain the requested information rose to the level of a due process violation. The defendants did not properly frame the issue for the trial court's consideration, and we must reverse.

{¶19} It cannot be ignored that Osredkar and Evans, in seeking information neither used nor maintained by the ODH, appear to be delving into territory specifically foreclosed by Ohio law. Whether agreed with or not, the Ohio Supreme Court's decision in *State v. Vega*, 12 Ohio St.3d 185, 465 N.E.2d 1303 (1984), remains valid. Defendants are precluded "from presenting expert testimony attacking the general scientific reliability of breath-alcohol tests that have been conducted in accordance with methods approved by the director of ODH." *Ilg,* 141 Ohio St.3d 22, 2014-Ohio-4258, 21 N.E.3d 278, at ¶ 2, citing *Vega*. The ODH has made a general policy decision that the breath profiles are not

necessary in Ohio because other methods are used to ensure the accuracy of the test results, methods that neither defendant challenged nor even discussed.

{¶20} Osredkar and Evans counter that in a few other cases, defendants received breath profiles in discovery. They conclude this necessarily means that the ODH has the information but refused to provide it to them. The defendants' conclusion does not necessarily follow, and in fact, the opposite conclusion is equally tenable — the ODH turns over all information in its possession when called upon to do so, even if the ODH does not normally maintain the information in the ordinary course of business. More to the point, just because the evidence may exist does not mean that it does in this particular case; and even if it does exist, the defendants must still demonstrate the discovery is both favorable and material. The defense expert merely opined that the breath profiles could potentially demonstrate inaccurate results. Supposition is not enough, especially considering the fact that the ODH adopted other measures to ensure the accuracy of the individual tests that neither defendant has contested at this point.

{¶21} Finally, nothing in the record indicates how all COBRA data from every Intoxilzer 8000 in the entire state of Ohio would be necessary for the defendants to challenge the reliability of the individual tests conducted on the particular Intoxilyzer 8000 used by the village. The trial court compelled the ODH to produce any and all COBRA data, which is not limited to the individual Intoxilyzer 8000 at the core of this dispute, and a full schema relating to any COBRA data collected in the state of Ohio. The Ohio Supreme Court unambiguously held that anyone

accused of an offense involving an Intoxilyzer 8000 machine may challenge the accuracy and credibility of a breath test by showing that the breath-analyzer machine failed to operate properly at the time of testing or that the results had not been analyzed in accordance with methods approved by the director of ODH.

*Ilg*, at ¶ 4. However, the scientific reliability of the Intoxilyzer 8000 machine in general is off limits. *Id.*, citing *Vega*. It seems that the only reason to seek and analyze the data generated from every machine in Ohio is to question the scientific reliability of the machines in general, in which case the information sought by the defense in this case goes well beyond testing the reliability of the individual test results. Unless the defendants are able to present specific evidence demonstrating how any and all information stored from every Intoxilyzer 8000 in the state of Ohio is even remotely relevant to testing the reliability of their individual test results, the discovery order is overly broad on its face and cannot be enforced.

{¶22} We acknowledge and can appreciate the considerable amount of time the trial court dedicated to ensuring the full flow of discovery in this case. We are constrained to follow the parameters set out by the Ohio Supreme Court in *Ilg*, *Vega*, and *Darmond*. Following those principles, we are compelled to reverse. The trial court did not consider whether the defendants were able to demonstrate that the missing discovery material was material and favorable to the accused and whether the state acted in bad faith in withholding or destroying the data. As a result, we reverse the decision of the trial court and remand for further proceedings consistent with our analysis. Our decision,

however, should not be interpreted as deciding whether a due process violation occurred — we cannot render a decision one way or the other within the scope of this appeal.

**{¶23}** We reverse and remand.

It is ordered that appellant recover from appellees costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR